Filed 2/26/13  Marriage of Lim and Carrasco CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of LILY LIM and MICHAEL CARRASCO. | H037845<br>(Santa Clara County<br>Super. Ct. No. FL006973) |
| LILY LIM,<br><br>        Respondent,<br><br>        v.<br><br>MICHAEL CARRASCO,<br><br>        Appellant. | |

**I.  INTRODUCTION**

In this marital dissolution action, appellant Michael Carrasco challenges the trial court's December 8, 2011 order directing respondent Lily Lim to pay him monthly temporary spousal support of $2,705 and monthly child support of $1,568, based on Lim's earnings of $22,076 per month while working an 80 percent schedule as an attorney.  Carrasco contends that the trial court abused its discretion in calculating support on Lim's actual income of $22,076 from her reduced work schedule, rather than her earnings capacity of approximately $27,595 per month when employed as a full-time attorney.

For reasons that we will explain, we conclude that the trial court did not abuse its discretion in calculating Lim's support obligations on the basis of her reduced income and we will affirm the December 8, 2011 order.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Lim and Carrasco were married in 2003 and separated in 2011.  They have two children who were both under the age of five when Carrasco filed a petition for dissolution of marriage on August 22, 2011.  Carrasco dismissed the petition without prejudice on August 25, 2011.  The record reflects that after an attempt at reconciliation failed, Lim filed a petition for dissolution of marriage on September 22, 2011.  At the time Lim's petition was filed, Carrasco was employed as a college professor with average monthly earnings of $9,156.  Lim was a partner in a law firm, where her monthly earnings averaged $27,237.

### A.  *Carrasco's Requests for Support*

On September 27, 2011, Carrasco filed an ex parte request for child custody, child support, visitation, and temporary spousal support.  Relevant to support issues, Carrasco stated in in his supporting declaration that he is a college professor who has a "flexible work schedule" and was "generally responsible for the children's care, such as feeding them their meals, bathing them, and putting them to bed."  Carrasco also stated that although Lim is a practicing attorney "able to work from home occasionally, her job still requires her to work extensive hours, and bill more than 2,500 hours annually."  The trial court set a hearing on an order to show cause why the relief sought by Carrasco should not be granted.

In her responsive declaration filed in opposition to Carrasco's request, Lim stated, with respect to support issues, that she agreed to pay guideline temporary child support in the amount of $1,612 per month.  Lim also stated that she had been on a medical leave of absence from her job and intended to return to work on October 31, 2011 "at 80% employment, to allow [her] to care for the children during this difficult transition."  Due

2

to her 80 percent work schedule, Lim's "gross monthly income" would "be reduced from approximately $27,595.26, to $22,076.20" and she would no longer be eligible for a bonus. She sought an order denying temporary spousal support "as a result of [Carrasco] perpetrating acts of domestic violence against me, as well as violent behavior toward our children."

**B.** *Hearing on Order to Show Cause*

At the hearing on the order to show cause held on November 14, 2011, the parties advised the trial court that they had resolved all issues with one exception. They requested that the court determine whether the award of temporary child and spousal support from November 28, 2011, forward should be based on Lim's full-time salary or her reduced salary from her 80 percent work schedule.

The trial court accepted Lim's offer of proof, as follows: "So if Miss Lim were to testify this afternoon, she would testify that she has been on medical leave since the [domestic violence] incident occurred at the end of September. She is scheduled to return to work on November 28th at an 80 percent reduced schedule. It was actually effective October 31st, but her leave was extended to November 28th. . . . [S]he's employed as a lawyer partner . . . . Her reduced schedule would result in [an annual] salary of $264,914.40." Lim then introduced into a evidence a letter from her law firm, which the record reflects included an agreement between Lim and her partners that her 80 percent reduced schedule was effective November 28, 2011.[1]

Lim's offer of proof also stated: "And she would testify that her reduction in her work schedule would be in her children's best interests as it would allow Ms. Lim a reasonable work schedule to care for their young children, who are ages 3 and 4. [¶] . . . [¶] She would testify that for the last fiscal year at her firm . . . that was during

---

[1] The letter confirming the agreement between Lim and her partners regarding her reduced work schedule was not included in the record on appeal.

3

the time their youngest child . . . was adopted and brought to this country from China, she was only able to bill 1,674 hours for that year. That was 80 percent of the 2,000 hour annual goal that's required for partners." On cross-examination, Lim stated that she was only able to bill 1,600 hours due to being off work for 10 weeks, having a second child, and not having support from her spouse. When questioned by the court, Lim made a further offer of proof that she would testify that to bill 2,000 hours per year, she would have to work 80 hours per week.

Carrasco's attorney stated in turn that "the only offer of proof I have is my client maintains full-time employment, just like he's supposed to under the statute. I think that if the court were [to] allow Ms. Lim to work less than her earning capacity, that would start a very dangerous precedent, and that would not be supported by the scope of the statutory law on this topic."

After hearing argument, the trial court ruled that it had the discretion to determine "whether to apply actual income or whether to apply some kind of imputed income." The court further stated, "It's common knowledge among lawyers that the big firms generally require a lot of hours . . . and that my questions of [Lim] really were trying to get to that, as to what is full time work? Full time work is not a 40-hour work week. Full time work is a certain number of billable hours per year which a full time employee is required to work regardless of the number of hours that day. . . . [¶] And it does appear from the testimony today that an 80 percent work load, which would be . . . 1,600 billable hours, really is going to take full time hours. . . . [¶] . . . Even working at 80 percent time is going to be working a substantial amount of the time. [¶] So I do find that it's in the best interests of the children that she work an 80 percent work week, given that that is work at a big law firm. . . . So then the child support should be based on her actual income at [$]22,000 a month . . . ."

4

**C. *Support Order***

The trial court issued its findings and order after hearing on December 8, 2011. Regarding support issues, the order states: (1) "Child support and spousal support shall be calculated based on [Lim's] 80% employment schedule, with earnings of $22,076.00 per month"; (2) "Commencing December 1, 2011, child support shall be paid from [Lim] to [Carrasco] in the amount of $1,568.00 per month and temporary spousal support shall be paid by [Lim] to [Carrasco] in the amount of $2,705.00 per month, for a total of $4,273.00 per month, as shown in the Dissomaster attached hereto as Exhibit A."

Carrasco subsequently filed a timely notice of appeal from the December 8, 2011 order.

**III.  DISCUSSION**

On appeal, Carrasco's chief contention is that the trial court erred by calculating Lim's temporary spousal support and child support obligations on the basis of her voluntarily reduced income from her 80 percent work schedule. We will begin our evaluation with the applicable standard of review.

**A. *Standard of Review***

The standard of review that applies to an order for temporary spousal support is abuse of discretion. (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327.) "[I]n exercising its broad discretion, the court may properly consider the 'big picture' concerning the parties' assets and income available for support in light of the marriage standard of living. [Citation.] Subject only to the general 'need' and 'the ability to pay,' the amount of a temporary spousal support award lies within the court's sound discretion, which will only be reversed on appeal on a showing of clear abuse of discretion. [Citation.]" (*Ibid.*)

Child support awards are also reviewed for abuse of discretion. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282-283 (*Cheriton*).) "We observe, however, that the trial court has 'a duty to exercise an informed and considered discretion with respect

5

to the [parent's child] support obligation . . . .' [Citation.] Furthermore, 'in reviewing child support orders we must also recognize that determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule. [Citations.]' [Citation.]" (*Ibid.*)

This court has explained that " '[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' [Citation.]" (*In re Marriage of Walker* (2012) 203 Cal.App.4th 137, 146.)

## B. *The Parties' Contentions*

Carrasco argues that since Lim's actual income as a full-time attorney, at the time of the November 14, 2011 support hearing, was approximately $27,500 per month, the trial court abused its discretion in failing to base its calculation of her temporary spousal support and child support obligations on that amount. He asserts that Lim had the ability and the opportunity to work a full-time employment schedule while caring for the children, as she had done during the parties' marriage, and therefore it is in the children's best interest for her to work full-time. Carrasco also contends that the trial court erred under Family Code section 4056[2,3] by failing to state on the record the amount of

---

[2] All further statutory references are to the Family Code unless otherwise indicated.

[3] Section 4056, subdivision (a) provides: "To comply with federal law, the court shall state, in writing or on the record, the following information whenever the court is ordering an amount for support that differs from the statewide uniform guideline formula amount under this article: [¶] (1) The amount of support that would have been ordered under the guideline formula. [¶] (2) The reasons the amount of support ordered differs from the guideline formula amount. [¶] (3) The reasons the amount of support ordered is consistent with the best interests of the children."

6

guideline support, the reasons for deviating from guideline support, and why deviation is consistent with the best interest of the children.

In response, Lim argues that the trial court acted within its discretion when it calculated her support obligations on the basis of her actual income from her 80 percent work schedule, since doing so was in the best interest of the children. She explains that she had "a grueling [work] schedule" during the marriage due to her law firm's requirement that she bill 2000 hours annually, which limited her time with her young children and deprived her of sleep. Lim emphasizes that even working an 80 percent schedule as a law firm partner, she will earn $264,914 per year and remain "substantially responsible for the support of the family" in light of Carrasco's lesser income of $100,000 per year. In Lim's view, the trial court properly considered that she will be more able to meet the needs of the children by working a reduced schedule.

Lim also disputes Carrasco's contention that the trial court erred in deviating from guideline child support, asserting that the court did not deviate since it used her actual income effective November 28, 2011, as evidenced by the letter from her law firm, to calculate guideline support.

### C. *Earning Capacity*

Since we understand Carrasco's chief contention on appeal to be that the trial court erred in calculating temporary spousal support and child support on the basis of Lim's actual income as of November 28, 2011, when she began working an 80 percent schedule, rather than her greater earning capacity as a full-time law firm partner, we will review the general rules regarding earning capacity.

" 'It has long been the rule in this state that a parent's earning capacity may be considered in determining spousal and child support. [Citations.]' [Citation.] '[F]or purposes of determining support, "earning capacity" represents the income the spouse is reasonably capable of earning based upon the spouse's age, health, education, marketable skills, employment history, and the availability of employment opportunities.'

7

[Citation.]" (*Cheriton*, *supra*, 92 Cal.App.4th at p. 301.) "By express statutory provision, trial courts have discretion to impute income to a parent based on earning capacity. (§ 4058, subd. (b).)"[4] (*Cheriton*, *supra*, at p. 301.) "But no authority permits a court to impute earning capacity to a parent unless doing so is in the best interest of the children. By explicit statutory direction, the court's determination of earning capacity must be 'consistent with the best interest of the children.' (§ 4058, subd. (b); [citations].)" (*Cheriton*, *supra*, at p. 301; see also *In re Marriage of LaBass & Munsee* (1997) 56 Cal.App.4th 1331, 1340.)

The California Supreme Court has considered the issue of whether earning capacity "should, as a general matter, properly be measured by the work regimen engaged in by the supporting spouse during the marriage even if such regimen was extraordinary, requiring excessive hours or an onerous work schedule." (*In re Marriage of Simpson* (1992) 4 Cal.4th 225, 234 (*Simpson*).) The court concluded "that earning capacity generally should not be based upon an extraordinary work regimen, but instead upon an objectively reasonable work regimen as it would exist at the time the determination of support is made. [Citation.]" (*Id.* at pp. 234-235.)

Our Supreme Court further determined that "[a] reasonable work regimen, as opposed to an extraordinary regimen, however, is not readily or precisely determined and is dependent upon all relevant circumstances, including the choice of jobs available within a particular occupation, working hours, and working conditions. Established employment norms, such as the standard 40-hour work week, are not controlling but are pertinent to this determination. In certain occupations a normal work week necessarily will require in excess of 40 hours or occasional overtime and thus perhaps an amount of time and effort which may be considered reasonable under the circumstances. A regimen

---

[4] Section 4058, subdivision (b) provides: "The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children."

8

requiring excessive hours or continuous, substantial overtime, however, generally should be considered extraordinary." (*Simpson*, *supra*, 4 Cal.4th at pp. 235-236, fn. omitted; see also *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 476 [working 60 hours per week constitutes excessive hours].)

### D. *Analysis*

In the present case, the trial court declined to impute income to Lim based on her earning capacity as a full-time law firm partner. The court implicitly found that as a full-time law firm partner Lim worked excessive hours, and determined that an 80 percent schedule would require her to work at least 40 hours per week in order to meet her law firm's billable hours requirement. The trial court further determined that an 80 percent schedule was in the children's best interest, and therefore calculated guideline child support and temporary spousal support on the basis of Lim's reduced income of $22,076 per month.

We are not convinced by Carrasco's argument that the trial court abused its discretion in failing to impute income to Lim based on her earning capacity of $27,595.26 per month as a full-time law firm partner. The relevant authorities do not support the proposition that the supporting spouse's income must be based upon an earning capacity that has been demonstrated by an onerous, excessive work regimen.

In *Simpson*, the issue before the California Supreme Court was whether the lower courts had properly imputed income to the husband, for purposes of calculating his temporary spousal support and child support obligations, based on the earning capacity he had demonstrated during the marriage while working 16-hour days as a stage hand. (*Simpson*, *supra*, 4 Cal.4th at pp. 229-231.) Our Supreme Court found that the record did not show that the husband could earn the imputed income while "working a reasonable number of hours." (*Id*. at p. 236.) The court therefore concluded that "the record fails to establish the trial court properly determined [his] earning capacity in accordance with the standard of an objectively reasonable work regimen." (*Ibid*.)

9

In so ruling, the *Simpson* court established the rule "that earning capacity generally should not be based upon an extraordinary work regimen, but instead upon an objectively reasonable work regimen as it would exist at the time the determination of support is made. [Citation.]" (*Simpson*, *supra*, 4 Cal.4th at pp. 234-235.) We therefore determine that the trial court acted within its discretion in declining to impute income to Lim based on her earning capacity as a full-time law firm partner with an extraordinary work regimen. (See *Id.* at p. 236.)

Moreover, we reiterate that this court has determined that "no authority permits a court to impute earning capacity to a parent unless doing so is in the best interest of the children. By explicit statutory direction, the court's determination of earning capacity must be 'consistent with the best interest of the children.' (§ 4058, subd. (b); [citations].)" (*Cheriton*, *supra*, 92 Cal.App.4th at p. 301.) We determine that substantial evidence supports the trial court's implicit finding that it was not in the children's best interest to impute earning capacity to Lim based on her previous income as a full-time law partner.

The evidence showed that Lim's income remained high, at $22,076.00 per month, even working an 80 percent schedule as a law firm partner. There was nothing to suggest that Lim had divested herself of her earning capacity at the expense of Carrasco or their children. (See, e.g., *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 999.) Further, Lim's evidence, as stated in her offer of proof, was that a reduced work schedule would allow her more time to care for her young children. The trial court did not err in finding that Lim's reduced work schedule was in the best interest of the children, since "sometimes 'the best interests of the children' are *promoted* when parents [reduce their work hours] so as to be able to spend more time with their children.' [Citation.]" (*In re Marriage of Mosley* (165 Cal.App.4th 1375, 1390; see also *In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, 1312-1313 [§ 4058 does not require "squeeze-the-last-drop workaholism" from either parent].)

10

Thus, we determine that Carrasco has not shown that the trial court abused its discretion when the court calculated Lim's temporary spousal support and child support obligations on the basis of her reduced income from her 80 percent work schedule, rather than her earning capacity as a full-time law firm partner with an extraordinary work regimen. The trial court's determination was not arbitrary or capricious and was consistent with the California Supreme Court's instruction in *Simpson* that earning capacity generally should be based upon an objectively reasonable work regimen at the time support is calculated. (*Simpson, supra*, 4 Cal.4th at pp. 234-235.)

Finally, we are not convinced by Carrasco's argument that the trial court's award of child support deviated from the guidelines and the court failed to comply with the requirements of section 4056 where there is a deviation from guideline support. In making this argument, Carrasco relies on section 4053, which provides in part: "In implementing the statewide uniform guideline, the courts shall adhere to the following principles: [¶] (a) A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life. [¶] (b) Both parents are mutually responsible for the support of their children. [¶] (c) The guideline takes into account each parent's actual income and level of responsibility for the children."

We agree with Lim that the trial court did not deviate from guideline child support by failing to base its support calculation on her previous income of $27,595.26 per month as a full-time law partner. The trial court found, as the evidence showed, that as of November 28, 2011, Lim's actual income from her 80 percent work schedule was $22,076 per month and used that figure in calculating child support without any deviation from the guidelines. The trial court therefore complied with the directive of section 4053, that the guideline calculation "tak[e] into account each parent's actual income." (§ 4053, subd. (c).)

For these reasons, we conclude that the trial court acted within its discretion when the court awarded temporary spousal support and child support on the basis of Lim's

11

reduced income from her 80 percent work schedule, and we will affirm the December 8, 2011 order.

## IV.  DISPOSITION

The December 8, 2011 order is affirmed.  Costs on appeal are awarded to respondent Lily Lim.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

MÁRQUEZ, J.

12