Filed 2/19/21  Marriage of Scales CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| In re Marriage of KARLA and ANTHONY SCALES. | B295037 |
| KARLA SCALES,<br><br>Respondent,<br><br>v.<br><br>ANTHONY SCALES,<br><br>Appellant. | (Los Angeles County Super. Ct. No. YD066091) |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph Lipner, Judge.  Affirmed.

John E. Carlson for Appellant.

C. Brian Martin for Respondent.

_____

Anthony Scales appeals the family law court's November 13, 2018 order denying his request to modify his child support obligations following his resignation from the Beverly Hills Police Department (BPHD). Anthony[1] contends the court abused its discretion in ruling his resignation did not constitute a significant change of circumstances warranting modification and imputing to him his preresignation earning capacity. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Anthony's Child Support Obligations and His Request To Modify*

Anthony and Karla Scales married in July 1998 and separated in July 2014. They have three children: 22-year-old Jordan, 20-year-old Maya and 17-year-old Mason.

Karla petitioned for dissolution of the marriage on January 14, 2015. On November 8, 2016 the family law court entered a judgment of dissolution and provided for spousal support, child custody and support, and division of property based on a September 12, 2016 stipulated judgment between the parties. As pertinent to this appeal, the court ordered Anthony to pay a total of $2,344 per month in child support—$672 for Jordan, $988 for Maya and $684 for Mason—to continue until each child reached age 18 (or up to age 19 if still in high school and living at home).[2]

---

[1] As is customary in family law proceedings, we refer to the parties by their first names for clarity.

[2] Anthony was also ordered to pay Karla $626 in monthly spousal support. The court terminated Anthony's spousal support obligation in November 2018 for reasons unrelated to the issues in this appeal.

When the parties agreed to Anthony's child support obligation and the court entered its judgment, Anthony was on paid administrative leave from BHPD, which was conducting an internal investigation into allegations he had committed workers' compensation fraud. Anthony had injured his back sometime in 2010 and received workers' compensation benefits while placed on injured-on-duty (IOD) status between April 2013 and January 2014. The internal investigation and Anthony's administrative leave began in January 2014.

On November 14, 2016—less than a week after entry of the judgment of dissolution—Anthony was notified the internal investigation had concluded and he could return to work. Three days later Anthony resigned from BHPD, claiming he could not competently or safely do his job because of continued back pain. Anthony had not sought any accommodations from BHPD prior to resigning.

On April 27, 2017 Anthony filed a request for order (RFO) to modify spousal and child support, citing his decreased income from his full-time work as a realtor, something he had pursued on a part-time basis while a police officer. Anthony requested the family law court terminate spousal support and reset his monthly child support payments based on the state guideline and his current income.[3]

---

[3] Anthony reported earning $21,813 in 2016. He filed income and expense declarations showing his 2017 and 2018 monthly income fluctuated between $1,700 and $3,260, with $1,550 to $1,880 in monthly expenses (excluding his support obligations). Anthony stated that, at the support levels set forth in the stipulated judgment, he spent on average $3,240 more than he earned each month.

Karla opposed Anthony's RFO, arguing Anthony was not entitled to reduce his support obligations based on quitting his job after he had been cleared, both medically and administratively, to return to work as a patrol officer. Karla also argued Anthony could not demonstrate he lacked the ability or opportunity to earn a greater income than reflected on his income declaration.

Anthony's work and injury history, continuing back pain and post-resignation employment were the focus of the family law court's consideration of the RFO.

2. *Anthony's Employment and Injury History*

Anthony worked as a community service officer for the Los Angeles County Sheriff's Department from 1991 until 1993 and as a sworn officer for the Los Angeles Police Department between 1993 and 1999. In 1999 Anthony became a patrol officer with BHPD. His position required that he be able to scale walls, run, fight and arrest uncooperative suspects.

As discussed, in 2010 Anthony injured his back while on duty. Anthony was off work for two weeks and then returned without restrictions. Anthony did not experience back pain again until late 2012. For several months beginning in December 2012 Anthony's renewed back pain progressively worsened to the point he had difficulty getting into and out of a police car while on duty and could not sit or stand for long periods.

In March 2013 Anthony reported to BHPD that he could not work due to pain in his back and hip area. BHPD placed Anthony on IOD status, and Anthony collected workers' compensation benefits between April 2013 and January 2014.

In January 2014 a lieutenant informed Anthony that BHPD had initiated an internal investigation based on an

allegation that Anthony had engaged in workers' compensation fraud. BHPD placed Anthony on administrative leave during the investigation. While on administrative leave between January 2014 and November 2016, Anthony did not work but still collected his salary.

a. *Anthony's physical examinations*

Following an MRI examination shortly after being placed on IOD status, Anthony was told he had a perforated left hip flexor and herniated discs in his lower back. Over the next eight months Anthony had multiple physical examinations. On April 16, 2013 a physician's progress report prescribed physical therapy and approved Anthony's return to modified work with restrictions on lifting and squatting. The report indicated, if light duty work was unavailable, "patient is considered to be temporarily totally disabled and should not resume regular work." Subsequent progress reports following examinations on April 23, April 30 and May 14 contained the same modified work restrictions. According to Anthony, BHPD had only one light duty position: a seniority- and merit-based desk job that was already filled by a senior officer.

A May 28, 2013 physician's progress report instructed Anthony to remain off work until June 11, 2013, pending an appointment with an orthopedist. Numerous post-examination reports from two different orthopedic practices categorized Anthony as temporarily totally disabled between August 2013 and January 2014.

An orthopedist cleared Anthony to return to work on January 20, 2014 with work restrictions on prolonged sitting and standing "if available." By that time Anthony was no longer receiving physical therapy through any medical practice. He

continued to do stretches and exercises on his own at home and in the gym.

A May 5, 2014 post-examination report indicated Anthony's thoracic spinal range of motion was normal and his hip had no swelling, atrophy or deformity and had a normal range of motion. A July 28, 2014 report stated Anthony's "symptoms had improved with conservative care and his home and gymnasium exercise routines." According to this report, Anthony had told the physician "he went on to full recovery with no physical limitations." "The patient has resumed his usual and customary work duties as a police officer, and I feel that he is capable of continuing to do so. Restrictions on his work activities are not indicated at this time. [Anthony] is not considered medically eligible for vocational rehabilitation at this time."

The next physician reports provided in connection with Anthony's RFO were from January and May 2016 and stated Anthony "may return back to work with full duty" and "no limitations or restrictions." One report suggested that Anthony prophylactically use lightweight equipment while on duty, but Anthony never discussed that possible accommodation with anyone at BHPD.

b. *Testimony regarding Anthony's physical condition*

Anthony testified at the RFO hearing that he had experienced back and hip pain on a daily basis since 2013. While the pain was initially intense, Anthony began to feel better over time.

However, the report from an orthopedic examination on February 22, 2017, three months after Anthony's resignation, stated Anthony's back pain persisted and indicated Anthony and the orthopedist had discussed "the frail nature of [Anthony's]

6

back" and the "potential of accelerating his spinal degenerative abnormality, ultimately requiring major surgical reconstruction." The orthopedist's report "endorse[d]" Anthony's decision to resign from BHPD. In addition, Anthony testified he experienced a further relapse in August 2017, which forced him to sleep on the floor for at least three weeks. Anthony testified, as of the time of the hearing, he still did not feel capable of safely sprinting or fighting.

For her part, Karla testified she recalled Anthony had been injured in 2012 but knew he continued to go to the gym and ride his bicycle. Karla described Anthony's injury as serious at first, but understood the pain diminished over time. While attending one of their children's recent sporting events, Karla had observed Anthony move very quickly to catch a falling bag. After Karla commented on Anthony's action, he acknowledged that a few years earlier he would not have been able to move as he had.

Karla also testified Anthony told her that he decided to resign because he felt other BHPD patrol officers did not like him and were going to make his work environment difficult.

### c. *Anthony's post-resignation employment*

After resigning from BHPD, Anthony worked full-time as a realtor. Anthony obtained his real estate license in 2000 and had worked part-time as a realtor while employed by BHPD. As a full-time realtor Anthony reported he earned "about minimum wage" and estimated his annual income at $30,000. While a BHPD employee, Anthony had ultimately earned approximately $120,000 a year before overtime.

Anthony did not apply for other employment after resigning from BHPD because he had already decided to move into real estate full time. Anthony did not look into, and did not

know, whether other job opportunities were available to him within BHPD that would not have required him to perform physical tasks he could not do.  Despite having previously worked in security, Anthony made no effort to identify other jobs he might be qualified for based on his long law enforcement career.  When asked why he did not try to find a different job, Anthony answered that his real estate career transition was "working for me."

        3.  *The Family Law Court's Order*

After conducting a trial on September 13, 2018 and October 5, 2018, the court issued a 14-page order on November 13, 2018 denying Anthony's request to reduce his child support obligations.  The court found that Anthony's health and physical condition had not changed between the time he had agreed to the support levels specified in the judgment of dissolution and his resignation from BHPD shortly thereafter.  In addition, the court pointed out, Anthony could have requested language in the stipulated judgment allowing for support modification in the event he left his job at BHPD, but did not do so.

The court also ruled Anthony had failed to carry his burden to show his former BHPD salary should not be imputed to him, noting a parent's voluntary decision to leave his or her employment is not a proper ground to reduce that parent's support obligations.  While Anthony continued to feel discomfort from his earlier injuries, the court concluded, he had not demonstrated he suffered from a disability that prevented him from working as a BHPD patrol officer when he chose to resign.  The court did not find credible Anthony's testimony there was "no way" he could go back to work in November 2016, and Anthony

did not provide medical evidence supporting his belief he could not work as a patrol officer in late 2016. To the contrary, the documentary evidence supported the conclusion that Anthony was healthy enough to return to his regular patrol work as early as 2014.

Finally, the court ruled Anthony had failed to establish a lack of ability or opportunity to earn his former salary in a different position. Anthony did not inquire whether BHPD could accommodate his perceived limitations in a different position and did not explore possible alternative law enforcement or security opportunities. In fact, Anthony did not apply to any kind of job after resigning from BHPD, having already decided to move into real estate.

## DISCUSSION

### 1. *Governing Law and Standard of Review*

As a general rule, a party seeking modification of a child support order must establish that circumstances have changed since the underlying order was made. (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 357; *In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1048; *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 556.) The burden of proof to justify a downward modification rests with the supporting party. (*In re Marriage of Cryer*, at p. 1054; *In re Marriage of Leonard*, at p. 556.)

"'"Change of circumstances" means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs. It includes all factors affecting need and the ability to pay.'" (*In re Marriage of Shimkus* (2016) 244 Cal.App.4th 1262, 1272-1273.) "'There are no rigid guidelines for evaluating whether circumstances have

sufficiently changed to warrant a child support modification.'" (*In re Marriage of Usher*, *supra*, 6 Cal.App.5th at p. 358.) "'The ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court.'" (*Ibid.*; see *In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1484 ["'A modification of spousal support cannot be granted in the absence of proof of a change in circumstances. However, the converse is not true; a showing of changed circumstances does not necessarily mandate a modification of spousal support'"].)

We generally review an order granting or denying a request to modify child support for abuse of discretion. (*In re Marriage of Usher*, *supra*, 6 Cal.App.5th at p. 357.) Under that standard, "'[W]e do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order.'" (*In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 527.)[4] However, "[t]o

---

[4]    To the extent an appellant challenges the factual basis for the family law court's decision to deny modification of support, rather than arguing it abused its discretion in determining the facts as found do not warrant modification, the question for the reviewing court is not whether substantial evidence supported the family law court's findings, but whether the evidence compelled findings in favor of the appellant as a matter of law: "'In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.' [Citation.] 'Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a

10

decide whether the trial court followed established legal principles and correctly interpreted the child support statutes, we apply the independent standard of review." (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 731.)

2. *Earning Capacity Versus Actual Income*

When a parent's income changes following entry of a child support order,[5] the family law court may properly consider "not only [that parent's] actual income, but earning capacity where a parent becomes unemployed or underemployed, provided doing so is consistent with the best interests of the children." (*Mendoza v. Ramos* (2010) 182 Cal.App.4th 680, 684-685.)

---

finding in favor of the appellant as a matter of law.'" (*Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979; accord, *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.) "'Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Juen*, at p. 979; accord, *Glovis America, Inc. v. County of Ventura* (2018) 28 Cal.App.5th 62, 71; see *In re R.V.* (2015) 61 Cal.4th 181, 201 [where a party fails to carry its burden on an issue in the trial court, "the inquiry on appeal is whether the weight and character of the evidence . . . was such that the [trial] court could not reasonably reject it"].)

[5] The court need not find the supporting spouse acted in bad faith to consider earning capacity rather than actual income. "'"While deliberate avoidance of family responsibilities is a significant factor in the decision to consider earning capacity [citation], [Family Code section 4058, subdivision (b),] explicitly authorizes consideration of earning capacity in all cases," consistent with the child's best interests.'" (*In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1245-1246.)

11

"'Earning capacity is composed of (1) the ability to work, including such factors as age, occupation, skills, education, health, background, work experience and qualifications; (2) the willingness to work exemplified through good faith efforts, due diligence and meaningful attempts to secure employment; and (3) an opportunity to work which means an employer who is willing to hire. . . . [¶] . . . When the ability to work or the opportunity to work is lacking, earning capacity is absent and application of the standard is inappropriate. When the payor is *unwilling* to pay and the other two factors are present, the court may apply the earnings capacity standard to deter the shirking of one's family obligations.'" (*Mendoza v. Ramos*, *supra*, 182 Cal.App.4th at p. 685; accord, *In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1245-1247; *In re Marriage of Lim & Carrasco* (2013) 214 Cal.App.4th 768, 775-776.)

Where the payor parent "'seeks a reduction in court-ordered support based on the changed circumstances of lack of income, it will be the payor parent, as moving party, who bears the burden of showing a *lack* of ability and opportunity to earn income.'" (*In re Marriage of McHugh*, *supra*, 231 Cal.App.4th at pp. 1246-1247; accord, *In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, 1304.) "This rule is grounded in the commonsense proposition that you can lead someone to a want ad but you can't make them apply for the job. . . . Readers need only use a little imagination to think of all the ways that a parent with both ability to do a job and the opportunity to get it could subtly sabotage a job application or interview." (*In re Marriage of Bardzik*, at p. 1305; accord, *In re Marriage of McHugh*, at pp. 1251-1252.)

12

3. *The Family Law Court Did Not Abuse Its Discretion in Determining Anthony Failed To Show Changed Circumstances Justifying Modification of His Child Support Obligations*

The family law court acted well within its discretion in determining Anthony's decision to resign from BHPD when his administrative leave terminated did not constitute changed circumstances warranting a reduction in his child support obligations. As discussed, Anthony resigned nine days after entry of the judgment of dissolution, which incorporated the stipulated terms for child support. No evidence suggested Anthony's medical condition had changed in the intervening period. The only change was BHPD's closure of its internal workers' compensation fraud investigation and, with it, the end of Anthony's administrative leave. Anthony was certainly aware that, if exonerated, he would be expected to return to patrol duty and, given the nearly three years that had elapsed since commencement of the fraud investigation, should have anticipated that could occur at any time. The court reasonably observed that the stipulated judgment could have, but did not, include language modifying Anthony's support obligations in the event he left BHPD. Given his unchanged physical condition, it does not matter whether Anthony was physically able to return to active police work and intended to do so when he agreed to the terms of the stipulated judgment or he had already decided to resign as soon as his paid administrative leave ended and was attempting to conceal that plan. Neither alternative justifies a modification of support.

Anthony contends his self-assessment that he could not safely return to patrol work fully justified his resignation. However, as discussed, after placed on IOD status in March 2013,

13

Anthony was medically cleared to return to his patrol officer duties in 2014 with no medical restrictions. Physician reports from 2016 reaffirmed Anthony's clearance to return to work with full duty and no limitations or restrictions. The only physician report arguably supporting Anthony's contention that he could not safely return to patrol work given his medical condition resulted from a February 2017 follow-up exam three months after Anthony had resigned from BHPD. This report merely "endorse[d]" Anthony's decision to resign after the fact.

In short, Anthony's evidence in support of his argument was neither uncontradicted nor of such character and weight as to compel a finding in his favor that Anthony's medical condition prevented him from continuing his employment as a BHPD patrol officer at the time he chose to resign. (See *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 979.)

To be sure, Anthony is correct that, as a factual matter, his income decreased and his economic situation had changed as a result of his resignation. However, a "'[c]hange of circumstances'" means a change in a supporting parent's ability to pay, or a change in the supported spouse's needs. (*In re Marriage of Shimkus*, *supra*, 244 Cal.App.4th at pp. 1272-1273.) Anthony's BHPD resignation did not necessarily reduce his ability to pay child support. Anthony might have easily obtained another job with an equivalent salary if he had made any effort to do so. Moreover, Anthony's contention ignores that a parent's showing of changed circumstances does not mandate support modification. As discussed, whether the facts presented warrant modification of support remains within the broad discretion of the family law court. (*Ibid.*; accord, *In re Marriage of Khera & Sameer*, *supra*,

14

206 Cal.App.4th at p. 1484.)  That discretion was reasonably exercised here.

4. *The Family Law Court Did Not Abuse Its Discretion in Determining Anthony Failed To Show Lack of Ability or Opportunity To Earn Income at His Previous Level*

Even if the court had found Anthony was physically incapable of returning to active patrol officer duty in November 2016, as the parent seeking support modification, Anthony had the burden to prove he lacked the ability or opportunity to earn a comparable income in a different job.  (*In re Marriage of McHugh*, *supra*, 231 Cal.App.4th at pp. 1245-1247.)  The family law court reasonably determined Anthony failed to carry this burden.

As discussed, after resigning from BHPD, Anthony made no effort to find other employment, preferring instead to expand his work in real estate from part-time to full-time.  Anthony had earned approximately $140,000 a year at BHPD.  During four years working full-time as a real estate agent, Anthony reported annual earnings of $30,000 or less.  Yet Anthony stated his career transition was "working for [him]."

Although Anthony acknowledges that income can be imputed based on earning capacity, he contends his resignation from BHPD and decision not to seek comparable employment should not be considered "voluntary," arguing his physical limitations precluded not only his return to BHPD as an active patrol officer but also his employment in security-related positions with other public or private employers, notwithstanding his extensive experience in law enforcement.  Yet he introduced scant evidence that, in light of his purported disability, he had neither the ability nor the opportunity to obtain such employment and with it a salary commensurate with the one on

15

which his child support obligations were based. The family law court's credibility findings—its disbelief of Anthony's self-description of the extent of his pain and its impact on his ability to work and its acceptance of Karla's testimony that Anthony's physical limitations diminished after 2013—amply support its rejection of this argument.

Simply put, Anthony did not have the right to divest himself of his earning ability at the expense of his minor children. (*In re Marriage of McHugh*, *supra*, 231 Cal.App.4th at p. 1253; see *Moss v. Superior Court* (1998) 17 Cal.4th 396, 424; *In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212, 1218; *In re Marriage of Ilas* (1993) 12 Cal.App.4th 1630, 1639.) "Instead, 'a child support obligation "'must be taken into account whenever an obligor wishes to pursue a different lifestyle or endeavor. . . . [It is] an overhead which must be paid first before any other expenses.'"'" (*In re Marriage of McHugh*, at p. 1253.)

In sum, the family law court did not abuse its discretion when it ruled Anthony had failed to carry his burdens to establish a reduction in his child support obligations was justified.

## DISPOSITION

The order denying modification of child support is affirmed. Karla is to recover her costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.                          FEUER, J.


16