Filed 11/18/22  Marriage of Manyere CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re Marriage of BRILLIANT and ANGELA RENEE MANYERE. | B313598 |
| BRILLIANT MANYERE,<br><br>Appellant,<br><br>v.<br><br>ANGELA RENEE MANYERE,<br><br>Respondent. | (Los Angeles County Super. Ct. No. 20LBFL01308) |

APPEAL from an order of the Superior Court of Los Angeles County, Carla L. Garrett, Judge.  Affirmed.

Brilliant Manyere, in pro. per., for Appellant.

No appearance for Respondent.

Brilliant Manyere appeals from a family court order awarding his spouse, Angela Manyere, $2,163 per month in pendente lite (temporary) spousal support. Brilliant[1] contends Angela misrepresented the circumstances of their separation and the family court failed to consider Angela's ability to access Brilliant's deferred compensation plan savings in calculating temporary spousal support. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Petition for Dissolution and Request for Order of Support*[2]

Brilliant and Angela married on April 13, 1984; they separated in April 2010; and Brilliant filed a petition for dissolution on December 31, 2010. They have two adult children. Since 1986 Brilliant has worked for the County of Los Angeles (County) as a property assessor. Angela worked as a deputy probation officer from 1998 to 2003, when she was diagnosed with cancer, and thereafter she was a stay-at-home parent. After

---

[1] We refer to the parties by their first names because they share a last name.

[2] The background facts are taken from Angela's declaration in support of her request for order awarding temporary spousal support and from Brilliant's responsive declaration. On our own motion, we augment the record to include Brilliant's December 31, 2020 petition for dissolution and income and expense declaration; Angela's February 16, 2021 request for order awarding temporary spousal support, attorneys' fees, and costs, and her income and expense declaration; Brilliant's March 30, 2021 responsive declaration and income and expense declaration; and Brilliant's April 7, 2021 income and expense declaration.

the parties' separation in 2010, Angela moved to Texas, where she presently lives with her parents and works as a teacher's aide.

On February 16, 2021 Angela filed a request for order (RFO) seeking $2,400 in monthly temporary spousal support and $4,000 in attorneys' fees. In her attached income and expense declaration, Angela, then 56 years old, stated she earned $1,368 per month working 40 hours per week as a teacher's aide, and she claimed monthly expenses of $3,525, including $1,200 in rent. Angela estimated Brilliant's monthly income was $12,533 based on his December 31, 2020 income and expense declaration filed with the petition for dissolution.

Angela averred in her declaration in support of the RFO that she suffered mental and physical abuse during the marriage, and she fled the home with her daughter in April 2010 after a heated argument with Brilliant. Brilliant cut off Angela's access to the family finances and refused to support her, forcing her to move in with her parents in Texas. However, because her parents were "getting older," Angela wanted to have her own residence to secure her financial future without relying on her parents' assistance. Angela stated she lived a middle- to high-income lifestyle during the marriage, including extensive travel, shopping, and dining out, and she and Brilliant owned their home. She submitted a DissoMaster[3] report that calculated monthly guideline spousal support at $2,894 per month based on

---

[3] DissoMaster is a computer software program widely used by courts and the family law bar in setting child and spousal support pursuant to the statewide uniform guidelines set by the Family Code and local rules. (See *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 5, & fn. 3.)

the parties' respective incomes. Angela requested $2,400 per month based on the report, which she asserted was "reasonable" under the circumstances.

On March 30, 2021 Brilliant filed a responsive declaration requesting the family court deny the RFO. Brilliant stated he should not be responsible for supporting Angela because during their 11 years of separation Angela chose to rely on her parents for support and did not pursue a remunerative career of her own, even though she is a college graduate with previous work experience as a probation officer, eligibility worker, and child support representative for the County. Brilliant averred that Angela "drained me financially upon our separation" by staying in hotels for an extended period and withdrawing $6,000 from the couple's joint account, and Angela did not provide any support for Brilliant or their children during their years of separation.[4] Angela's excessive spending caused Brilliant to remove Angela from the joint account. Unable to pay his bills, Brilliant filed for bankruptcy in 2012. Brilliant asserted further, "Division of my deferred compensation from this dissolution will provide [Angela] with sufficient support. She will be granted half of the contributions made when were together from 1990-2010." Moreover, "the support [Angela] receives from her parents should be the source for her attorney's fees."

On March 30, 2021 Brilliant filed an income and expense declaration stating his gross pre-tax pay was $12,558 per month,

---

[4] Brilliant and Angela's daughter was approximately 14 years old at the time of the 2010 separation. According to Angela, although their daughter initially left the family home with Angela, she did not move with Angela to Texas because she was enrolled in school in California.

4

but his average monthly income was $8,709.[5] He listed approximately $28,800 in assets and $10,028 in monthly expenses, including $1,277 for home loan payments and $2,000 in "savings and investments." He submitted pay stubs showing his gross monthly pay was approximately $16,100 in January 2021 and $13,000 in February 2021. His monthly contribution to his deferred compensation retirement plan was approximately $2,900 in January and $2,600 in February.

B.    *Hearing on the RFO*

The family court heard the RFO on April 12, 2021. Both parties were present in court and represented by counsel. After the court summarized the parties' declarations, Angela's attorney argued that Brilliant's declaration failed to address Angela's assertions of domestic violence and the marital standard of living, and Angela's support request was very modest in seeking only $1,200 for monthly rent, $400 for food, and limited additional amounts to travel to California to visit her children and grandchildren. Moreover, Brilliant's income and expense declaration showed he was able to pay spousal support in light of his $2,000 in monthly investments and savings "in addition to what they take out for his deferred compensation and his retirement." Angela's attorney argued further, "For [Brilliant] to state [Angela] can use the deferred compensation, her half, he has the same half, if not more, and she's only 56 years of age.

---

[5]    On April 7, 2021 Brilliant filed an updated income and expense declaration stating he had an average monthly income of $9,669, comprised of his salary and overtime. The declaration was otherwise unchanged from the March 30 declaration.

5

She cannot go into the retirement account until she's 59 and a half. That's not even an option at this point."

Brilliant's attorney argued Angela should receive "little if any" temporary spousal support because she had abandoned Brilliant to raise their children, she was supported by her parents, she gave up her job without presenting medical evidence of her inability to work, and the cost of living was lower in Texas than California.

After hearing argument, the family court announced it had prepared a DissoMaster report "just based on the income and expense declaration[s] that both parties provided." The guideline monthly spousal support generated by the DissoMaster was $1,671 based on Brilliant's declaration that he earned "$8,709 per month gross." Angela's attorney argued the calculation was inaccurate because Brilliant stated in his December 31, 2020 income and expense declaration that he earned $12,558 per month. Asked to address the discrepancy, Brilliant's attorney explained that Brilliant's "pay from the County is quite complicated to figure out," and Brilliant actually earned $9,153 per month before taxes. Angela's attorney responded that Brilliant's pay stubs indicated his gross pay was significantly higher. The court and the attorneys began a fruitless effort to attempt to decipher Brilliant's County pay stubs, but eventually the court called a recess and directed the parties "to see if you can figure out where you are, what the numbers look like, then we can have a discussion."

After the recess, Brilliant and Angela jointly submitted a DissoMaster report that used Brilliant's IRS Form W-2 income for 2020 instead of his pay stubs to calculate his monthly income. Brilliant's and Angela's attorneys confirmed they prepared the

report together.  In the "Input Data" field, the report listed Brilliant's monthly wage and salary income as $9,669 and Angela's monthly income as $1,367. The parties did not itemize any 401(k) or other deferred compensation contributions, or other deductions or adjustments to their monthly income, except for minor entries reflecting Brilliant's union dues ($84), Angela's health insurance ($133), and Angela's mandatory retirement contributions ($27).  Based on these inputs, the DissoMaster calculated guideline support of $2,163 per month for Angela.

After receiving the DissoMaster report, the family court stated, "I'm glad you guys got together and came up with some numbers.  Now, I understand the concerns. . . .  I understand there [are] some issues regarding how long you two have been separated, Sir, and the issues that you have regarding paying any temporary spousal support. . . .  However, . . . the court is going to grant temporary spousal support in this case.  And I'm going to base that on the report that the parties have just provided that suggests that the guideline support is $2,163 per month."  The court denied Angela's request for retroactive support and ordered payments to commence in two monthly installments beginning May 12, 2021.  The court also awarded Angela $4,000 in attorneys' fees after finding "there is a disparity, . . . there is an ability on [Brilliant] to pay, and . . . there is a need."  On May 7, 2021 the court entered the findings and order after hearing setting forth the terms of Brilliant's monthly spousal support and attorneys' fees payment, and attaching the final DissoMaster report.

7

Brilliant timely appealed.[6]

## DISCUSSION

A.  *Governing Law and Standard of Review*

Under Family Code section 3600,[7] a family court may order temporary spousal support in "any amount that is necessary for the support of the other spouse," as long as the amount is consistent with section 4320 (listing circumstances to consider in ordering support) and section 4325 (limiting spousal support awards to a spouse convicted of domestic violence).  "The purpose of pendente lite spousal support is to maintain the parties' standards of living in as close as possible to the preseparation status quo, pending trial.  In fixing temporary spousal support, trial courts are not restricted by any set of statutory guidelines." (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 103-104; accord, *In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 514; *In re Marriage of Samson* (2011) 197 Cal.App.4th 23, 29.)  "'[I]n exercising its broad discretion, the court may properly consider the "big picture" concerning the parties' assets and income available for support in light of the

---

[6]     Brilliant does not assert any arguments regarding the attorneys' fees award, thereby forfeiting any challenge to the fee award on appeal.  (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal deemed waived]; *Eck v. City of Los Angeles* (2019) 41 Cal.App.5th 141, 146 [appellant forfeited or abandoned issue not raised in appellate briefs].)

[7]     All further undesignated statutory references are to the Family Code.

marriage standard of living.'" (*Marriage of Lim & Carrasco* (2013) 214 Cal.App.4th 768, 773; accord, *In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327.)

We review an order for temporary spousal support for an abuse of discretion. (*In re Marriage of Ciprari, supra*, 32 Cal.App.5th at p. 104 ["[t]he amount of the award lies within the trial court's sound discretion, and is reversible only on a showing of clear abuse of discretion"]; *In re Marriage of Lim & Carrasco, supra*, 214 Cal.App.4th at p. 773.) "Under this standard, we consider only 'whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion.' [Citation.] 'We do not substitute our own judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order.'" (*In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 527; accord, *In re Marriage of Smith* (2015) 242 Cal.App.4th 529, 532 [a support order "'will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made'"].) "On review for substantial evidence, we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference. [Citation.] We accept all evidence favorable to the prevailing party as true and discard contrary evidence." (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151; accord, *In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 470.)

9

B.    *Substantial Evidence Supports the Family Court's Order for Temporary Spousal Support*

The family court based its order for $2,163 per month in temporary spousal support entirely on the guideline support set forth in the DissoMaster report jointly submitted by the parties during the hearing on the RFO. The income inputs used to generate the guideline support were agreed upon by the parties. Further, the inputs are supported by substantial evidence. Brilliant's income input ($9,669) was based on Brilliant's 2020 IRS Form W-2, and it also matched the gross average monthly income that Brilliant stated in his April 7, 2021 income and expense declaration. Angela's income input ($1,367) matched the gross monthly income set forth in her February 16, 2021 income and expense declaration. Further, Angela attested in her declaration in support of the RFO that she enjoyed a middle- to high-income lifestyle prior to separation, she was now working 40 hours per week as a teacher's aide, and although her parents supported her during the separation, they were getting older and she could not rely on them to continue supporting her financially. Based on this evidence, the court did not abuse its broad discretion in ordering guideline support that was "based on the supported spouse's needs and the other spouse's ability to pay." (*In re Marriage of Samson, supra*, 197 Cal.App.4th at p. 29.)

Brilliant contends the family court erred in issuing the support order because Angela misled the court into believing she was forced out of the marital home in 2010, although she left of her own free will. He argues further that Angela lied to the court about Brilliant cutting off her access to the parties' finances, when Angela in fact "plundered" their bank accounts and maxed

10

out their credit cards, driving Brilliant into bankruptcy.[8]  He also argues that Angela's claims of spousal abuse were uncorroborated.[9]

However even if any of Brilliant's contentions had merit (which is not clear from the record), these asserted facts are not relevant to the appeal because the family court made no findings

---

[8]	Brilliant's opening brief includes numerous allegations regarding Angela's 2010 departure and financial misconduct that are not reflected in the record, even as augmented.  It is appellant's burden to affirmatively demonstrate error by the lower court, and "'[f]ailure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].'" (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)  Moreover, when an appellant ""fails to support [a point] with reasoned argument and citations to authority, we treat the point as waived."" (*Shenefield v. Shenefield* (2022) 75 Cal.App.5th 619, 641; accord, *Vines v. O'Reilly Auto Enterprises, LLC* (2022) 74 Cal.App.5th 174, 190.) We recognize Brilliant is self-represented and his understanding of the rules on appeal is, as a practical matter, more limited than an experienced appellate attorney's, and whenever possible, we do not strictly apply technical rules of procedure in a manner that deprives a self-represented litigant of a hearing.  But we are required to apply the rules on appeal and the substantive rules of law to the litigant's claims on appeal, just as we would to those litigants who are represented by trained legal counsel. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

[9]	Brilliant asserts that at the hearing on the RFO "he raised his hand and wished to address the Court regarding the abuse allegations, but the trial court declined to listen to [him]."  The reporter's transcript does not reflect that the trial court prevented Brilliant from speaking, and both Brilliant and his attorney addressed the court multiple times during the hearing.

regarding the parties' 2010 separation or Angela's use of joint funds, and it did not base its award of temporary spousal support on anything other than the parties' income and expenses. As discussed, the court at the hearing summarized both parties' allegations concerning the 2010 separation, then announced it had prepared a DissoMaster report "just based on the income and expense declaration that both parties provided." And in making its award of temporary spousal support, the court adopted the parties' joint DissoMaster report without making any adjustments based on either party's allegations.

Brilliant also contends the family court overlooked his deferred compensation plan in determining the amount of money Angela needed for support. He argues Angela's community share of these retirement funds would have provided her with a substantially better standard of living than she enjoyed prior to separation, and the court could have enabled Angela to access her share of the funds through a qualified domestic relations order.[10] Brilliant also argues Angela's attorney misled the court into believing Brilliant had sufficient money to pay spousal support by stating Brilliant had $2,000 in monthly savings "in addition to what they take out for his deferred compensation and his

---

[10]    Brilliant points to Los Angeles County Code section 5.25.125, which he asserts provides for early distribution of retirement funds pursuant to a qualified domestic relations order. We do not reach whether Angela could have accessed her share of Brilliant's deferred compensation plan funds because, as discussed below, Brilliant waived any challenge to the income attributed to him in the negotiated DissoMaster report used by the family court in calculating temporary spousal support.

retirement," when in fact his reported savings included his retirement contributions.

These arguments are unavailing. First, neither party asked the family court to enter a qualified domestic relations order piercing Brilliant's retirement account, and in any event, as Angela's attorney observed, even if Angela could access Brilliant's deferred compensation plan as a source of income, arguably Brilliant could as well, thereby affecting his available funds. Most significantly, Brilliant waived any challenge to the income attributed to him in calculating temporary spousal support by reaching an agreement with Angela on the inputs to the DissoMaster report the parties jointly submitted to the court. Brilliant's attorney confirmed to the court that the joint DissoMaster report reflected the parties' agreement on the income figures. Brilliant has therefore waived any challenge to the income available for support. (See *In re Marriage of Lionberger* (1979) 97 Cal.App.3d 56, 60-62 [after parties stipulated to spousal support, wife who raised no objection when the trial court and counsel discussed the amount and termination date of support payments impliedly waived her right to challenge the termination date on appeal]; see also *In re Marriage of Freeman* (1996) 45 Cal.App.4th 1437, 1450-1451 [where the parties entered a stipulated judgment embodying the trial court's earlier determination the husband was not sterile and a blood test would not be ordered, husband waived his right to contend on appeal that he was denied due process without a blood test].)[11]

_____

[11] Further, although Brilliant's IRS Form W-2 is not in the record, the $9,669 monthly income extrapolated from the Form W-2 and entered into the DissoMaster appears to have excluded

13

**DISPOSITION**

The family court's May 7, 2021 order for temporary spousal support is affirmed.  Brilliant is to bear his own costs on appeal.

FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.

---

Brilliant's deferred compensation contributions given that Brilliant's monthly pre-tax gross earnings on his January and February 2021 pay stubs exceeded $9,669 by several thousand dollars, and his December 31, 2020 income and expense declaration likewise listed his monthly pre-tax gross income as $12,533.