Filed 2/22/23  Marriage of Rookey CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of SHEILA D. and KEVIN ROOKEY. | |
| SHEILA D. ROOKEY, | D079498 |
| Appellant, | (Super. Ct. No. ED95811) |
| v. | |
| KEVIN M. ROOKEY, | |
| Respondent. | |

APPEAL from a postjudgment order of the Superior Court of San Diego County, Edlene C. McKenzie, Judge.  Affirmed in part, reversed in part and remanded with directions.

Antonyan Miranda, Anthony John Boucek and Timothy Miranda for Appellant.

Law Office of Linda Cianciolo and Linda Cianciolo for Respondent.

Appellant Sheila D. Rookey appeals from a postjudgment order entered following an evidentiary hearing on respondent Kevin Rookey's requests for orders seeking, among other things, modifications of child and spousal

support, an award of attorney fees, and Family Code[1] section 271 sanctions. The family court's order reduced monthly spousal support to $900 retroactive to May 2019 stepping down to zero starting January 2024, excluded certain stock-based compensation awarded to Kevin (known as restricted stock units or RSU's) for purposes of calculating support, and found that from May 1, 2019, forward, Kevin did not receive income that would be subject to an *Ostler/Smith*[2] division. The court ordered that Sheila pay $35,000 in section 271 sanctions and Kevin pay $35,000 as a contribution to Sheila's attorney fees.

Sheila contends the court prejudicially erred and exceeded its jurisdiction by reducing support retroactive to May 1, 2019, retroactively vacating the *Ostler/Smith* bonus support component from the judgment, and excluding all of Kevin's RSU's for purposes of calculating support. She

---

[1]    Undesignated statutory references are to the Family Code. We refer to the parties by their first names for clarity, not out of disrespect.

[2]    An *Ostler/Smith* provision is " 'an additional award, over and above guideline support, expressed as a fraction or percentage of any discretionary bonus actually received' " for the purpose of capturing fluctuations in the supporting spouse's income that is not included in a flat rate amount of support. (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 949; see *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 54.) The *Ostler & Smith* court explained: " 'No future bonus is guaranteed. It would therefore not be appropriate to base a support order on Husband's bonus income and then require him to file motions to modify at such times as the bonus is reduced. It would be more fair to all parties to base the support order on Husband's income from salary . . . , and to allocate a portion of the future bonus income to the children and to Wife by way of a percentage interest so that future litigation will not be necessary as the bonus income changes.' " (*Ostler & Smith*, at pp. 41-42; see also *In re Marriage of Mosley* (2008) 165 Cal.App.4th 1375, 1387.)

2

additionally challenges the court's determination of Kevin's income available for permanent support as well as its issuance of step-down orders for permanent spousal support over the next three years and decision to terminate its jurisdiction. Sheila finally contends the court erred by ordering her to pay monetary sanctions and awarding her only $35,000 out of her request for $155,000 in attorney fees.

We conclude the court erred by modifying child and spousal support retroactive to May 1, 2019, when Kevin's request for order was filed two weeks later, on May 14, 2019. We also conclude the court's imputation of Kevin's average monthly wages as income for purposes of calculating support effective November 2020 did not follow established legal principles. We remand with directions that the court recalculate support in a manner consistent with the principles discussed below. In all other respects, including with respect to the step-down order as may be modified by the court's recalculation of spousal support, we affirm the postjudgment order.

FACTUAL AND PROCEDURAL BACKGROUND

The parties were married in February 2002 and separated on November 1, 2014. In November 2017, the parties obtained a partial stipulated judgment of dissolution of their 12-year eight-month marriage. In that judgment, the family court reserved jurisdiction over child and spousal support. At the time, the parties had three minor children.[3]

In December 2018, the family court (Judge Epley) entered a judgment on reserved issues, including child and spousal support. It also considered attorney fees and sanctions. As to child support, the court found Sheila had the ability to work but had not complied with a previously issued *Gavron*

---

[3] The oldest child was emancipated by the time of Kevin's modification petition.

3

warning[4] to become self-supporting within a reasonable time period. The court advised Sheila it would consider any continued noncompliance in future support modification motions. Finding Kevin's monthly wages to be $31,158 and imputing to Sheila $28,000 in yearly income, it ordered Kevin to pay $3,363 in monthly child support. The court found that Kevin's RSU's were not income but property to be divided in accordance with its property division orders. It ordered pursuant to *Smith/Ostler* that Kevin would pay 6.12 percent of his quarterly income above $124,632 toward child support.

The court ordered Kevin to pay Sheila $3,000 in monthly spousal support starting July 1, 2018. It included a 13 percent *Ostler/Smith* bonus not to exceed $5,000 per month. The court again advised Sheila that if she continued to make little effort to advance her employment it would consider that behavior toward future spousal support modification requests.

The court addressed community debts and offsets, finding Sheila owed Kevin $13,535.29 as an equalization payment. It ordered Sheila to make monthly $500 payments to Kevin as of August 1, 2018, that Kevin could withhold any *Ostler/Smith* payments as long as Sheila's equalization debt was outstanding, and that the remaining balance would be due in full if Sheila missed more than two months of payments.

As to attorney fees and section 271 sanctions, the court found Kevin had incurred fees due to Sheila's conduct, and ordered Sheila to pay Kevin $7,000 in attorney fees. It ordered Kevin to contribute $15,000 toward Sheila's attorney fees.

---

4     *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705. "[W]hat has become known as a '*Gavron* warning' is a fair warning to the supported spouse he or she is expected to become self-supporting." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 55.)

4

In March 2019, Kevin sought correction of the December 2018 judgment as to the *Ostler/Smith* payments for purposes of spousal and child support, to reflect they should be paid quarterly and to include correct end dates. He asked the court to order that Sheila pay his fees and costs in making the request as a sanction for her delays and failure to abide by certain agreements and orders.

In May 2019, Kevin filed an additional request for an order to modify the child and spousal support orders to the guideline amount, this time representing himself. He averred in a sworn declaration that his employment had been eliminated, he had agreed to a 10-month severance package, and he was requesting his current income be modified to reflect his new monthly wages. In response to Kevin's requests, Sheila sought $38,250 in attorney fees to pay for retaining counsel.

The court eventually set the hearing on both Kevin's and Sheila's requests to August 20, 2019. Kevin later asked that the hearing date be continued to September 6, 2019, to consolidate it with his request for correction of the December 2018 judgment. Sheila opposed Kevin's requests, filing responsive and supplemental declarations as well as points and authorities. She included a request for $6,069 in sanctions for Kevin's assertedly "needless litigation."

In September 2019, the family court heard Kevin's March 2019 request to clarify the judgment, correcting its ruling to reflect that Kevin's gross income was $31,158 monthly or $93,474 each quarter. The court ordered the parties to meet and confer to determine what additional funds Kevin was required to pay within thirty days of the end of each quarter. It stated the equalization issue was not before it, and declined to make an order as to that payment. The court denied both parties' requests for section 271 sanctions.

The family court eventually set Kevin's and Sheila's other pending requests (Kevin's requests for modification of child and spousal support and for sanctions, and Sheila's request for attorney fees) for an evidentiary hearing, which took place over the course of five days in December 2020, January 2021 and March 2021.[5] Among other things, Kevin testified that after his entire department was eliminated he was unable to locate work comparable to his previous unique job as a relationship manager, leading to his decision in November 2019 to open a new business, Restoration RX. Though he reported to a vocational expert that he had zero income his first year, Kevin testified that Restoration RX's projected earnings in 2020 would be at least $50,000 and would grow the following year. Kevin explained he had not "run those numbers" by the time of the evidentiary hearing and did not have an accurate number for the money Restoration RX had made in the past year. Nevertheless, Kevin anticipated his total net Restoration RX income to be about $100,000, and "upwards of" $150,000 in his third year.[6] Kevin testified the business was starting to earn roughly $4000 a month, but he had not drawn a paycheck. He accessed funds by selling securities and using his savings. Kevin sought a determination that he made support overpayments as he had paid support for the past 20 months based on an over $400,000 income.

---

[5] The court had reserved for those hearings the issue of retroactivity of Kevin's support modification requests. By March 2021, Kevin was representing himself.

[6] Kevin testified his income projections for the company were based on "[g]ross [income] of the company, my market analysis, competitors, [and] consultants." When asked if he was guessing, Kevin explained he thought any future projection was a guess.

In May 2021, the court issued an ex parte minute order with its findings and orders after the hearings.  Questioning whether the court intended the ex parte minute order to be a tentative or final decision, Sheila then requested a formal statement of decision and alternatively objected to the court's ex parte findings and orders.

After considering Sheila's request and objections, the family court in June 2021 issued its final statement of decision.[7]  Sheila filed this appeal from the June 2021 postjudgment order.

## DISCUSSION

### I. *Standard of Review of Support Modification Orders*

This court reviews for abuse of discretion the family court's decision to grant or deny modification of a support order.  (*In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 472.)  "Discretion is abused when its exercise is arbitrary, whimsical, or capricious." (*In re Marriage of Battenburg* (1994) 28 Cal.App.4th 1338, 1343.)  We reverse " 'only if prejudicial error is found after examining the record of the proceedings below.' " (*Lusby*, at p. 472.)  Where a party challenges the family court's factual findings, " 'our review follows established principles concerning the existence of substantial evidence in support of the findings.  . . . [W]e examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference.  [Citation.]  We accept all evidence favorable to the prevailing party as true and discard contrary evidence.' " (*Ibid*.)

We review questions concerning interpretation of statutes as a matter of law.  (*In re Marriage of Lusby*, *supra*, 64 Cal.App.4th at p. 472; *In re Marriage of Rosenfeld & Gross* (2014) 225 Cal.App.4th 478, 485.)  "Likewise,

---

[7]    We detail the court's challenged orders and findings in connection with Sheila's contentions.

'the interpretation of a contract or other written instrument is a question of law if there is no extrinsic evidence thereon or if the evidence is without conflict and is not susceptible of conflicting inferences.' [Citation.] So too, '[t]he question of the trial court's jurisdiction is a pure question of law subject to our independent review.' " (*In re Marriage of Rosenfeld & Gross*, at p. 485.) A family court's failure to exercise discretion is itself an abuse of discretion reviewed under that standard of review. (*Ibid.*)

On appeal, a judgment or an order is presumed to be correct, and Sheila as the party challenging the order must affirmatively show error. (E.g., *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) We also presume judicial duty is properly performed; that the court below knows and applies the correct statutory and case law, and will ignore material it knows is incompetent, irrelevant, or inadmissible. (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1526.)

II. *Principles Concerning the Court's Statement of Decision*

Section 3654 requires the court on request of either party to include a statement of decision for an order modifying or terminating a support order. " 'The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case.' [Citation.] ' "Where [a] statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision." ' [Citation.] [¶] A party may avoid implied findings in favor of a judgment, and preserve perceived error in a statement of decision, by making specific objections to the statement of decision. Code of

Civil Procedure sections 632 and 634 prescribe a two-step process for doing so. '[F]irst, a party must request a statement of decision as to specific issues . . . ; second, if the court issues such a statement, a party claiming deficiencies therein must bring such defects to the trial court's attention to avoid implied findings on appeal favorable to the judgment.' " (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 94 (*Ciprari*).)

Addressing these standards, Sheila states that "[w]ith respect to asserted error in a statement of decision, supporting findings are not implied." She suggests these principles apply here because she requested clarifications or additions to the court's statement of decision but her request was denied. We disagree. While Sheila objected to the family court's May 2021 ex parte minute order and sought a formal statement of decision, there is no indication in the record that she asserted objections to the court's June 2021 statement of decision. Accordingly, we are not prohibited from implying findings or drawing inferences in favor of the court's determinations in its statement of decision.

### III. *Exercise of Retroactive Jurisdiction*

#### A. *Spousal and Child Support Modification*

Sheila contends the family court erred by modifying child and spousal support retroactive to May 1, 2019, when Kevin's request for order was filed on May 14, 2019, and he only sought modification retroactive to June 1, 2019. She relies on sections 3653 and 4333, which provide that support orders "may

9

be made retroactive to the date of filing the notice of motion or order to show cause . . . , or to any subsequent date."[8]

Sheila is correct. Under the above-cited provisions, a trial court will act in excess of jurisdiction if it modifies support retroactive to any time before the filing of the obligor's modification motion. (*S.C. v. G.S.* (2019) 38 Cal.App.5th 591, 599; see also *Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 26 [section 3653, subdivision (a) and other statutes with retroactivity provisions " 'permit[ ] the trial court to make its ruling retroactive to the filing date of the motion, *but no earlier*,' " italics added]; *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 638 ["even on a showing of changed circumstances, a 'court may not *retroactively* modify a prior order for temporary spousal support' "].) " 'The filing date, in other words, establishes the outermost limit of retroactivity.' " (*Stover*, at p. 26, quoting *In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 604, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995.)

Kevin acknowledges the limitation in section 3653 but asserts the court presumably made its modification effective May 1, 2019, because it recognized he lost his job on April 23, 2019, and notified Sheila the same day.

---

[8] Section 3653 provides in part that an order modifying or terminating a support order "may be made retroactive to the date of the filing of the notice of motion or order to show cause to modify or terminate, or to any subsequent date . . . ." (§ 3653, subd. (a).) Subdivision (b) of section 3653 provides in part that "[i]f an order modifying or terminating a support order is entered due to the unemployment of either the support obligor or the support obligee, the order shall be made retroactive to the later of the date of the service on the opposing party of the notice of motion or order to show cause to modify or terminate or the date of unemployment . . . ." Section 4333 provides: "An order for spousal support in a proceeding for dissolution of marriage or for legal separation of the parties may be made retroactive to the date of filing the notice of motion or order to show cause, or to any subsequent date."

10

He characterizes section 3653 as permitting the court in the event of a party's unemployment to make a support order "retroactive either going back to when the opposing party was notified of the motion or to the date the party became unemployed unless there is good cause to show that the order should not be made retroactive."[9] But this assertion mischaracterizes section 3653, omitting statutory language stating in the event of a support obligor's unemployment an order "shall be made retroactive *to the later of* the date of the service on the opposing party of the notice of motion or order to show cause to modify or terminate or the date of unemployment . . . ." (§ 3653, subd. (b), italics added.) By its terms, section 3653, subdivision (b) does not permit a court to make a support order retroactive to the date of unemployment if the request to modify support was served *after* that date.

We thus conclude as a matter of law the trial court erred by issuing its support orders retroactive to May 1, 2019.

B. Ostler/Smith *Order*

In its statement of decision, the court agreed with Kevin's argument that "his severance pay should not be used for [an *Ostler/Smith* bonus] because it would be double dipping if severance was also used to calculate support." It stated: "Based upon this court's findings, for the period of May 1, 2019[,] forward, the court finds that Kevin received no income which would

---

9     Kevin goes on to say, "Should this Court agree with [Sheila] that the modification should have been effective June 1, 2019, or back to date of filing, May 14, 2019, it is a simple matter to add the previous amount for support to the arrears that were calculated by the trial court." Kevin does not argue that he served his papers in support of his modification request any earlier than the date he filed them. We observe that during the hearing on his modification request, Kevin asked the court to adopt his schedules for child and spousal support and "for them to be applied retroactively to the date of filing of this motion."

11

be subject to a[n *Ostler/Smith*] division.  The court vacates any [*Ostler/Smith*] order."

Sheila contends the family court exceeded its jurisdiction by vacating the *Ostler/Smith* bonus support provisions from the judgment.  She points out that at trial, Kevin only asked the court to remove the *Ostler/Smith* calculations after May 31, 2019.  Sheila characterizes the court's order as extinguishing "all accrued bonus support," thereby prejudicing her and their children.

Sheila's contention is without reasoned legal argument and relevant supporting authority, so we treat it as forfeited for that reason alone. (*Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 383; see also *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146 [" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record' "]; *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.)  We are not bound to develop her arguments.  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

Even if we were to consider the argument, it would not persuade us. Assessing the meaning of the court's order de novo (*In re Marriage of Rosenfeld & Gross*, *supra*, 225 Cal.App.4th at p. 485; *In re Ins. Installment Fee* (2012) 211 Cal.App.4th 1395, 1429 ["The meaning of a court order or judgment is a question of law within the ambit of the appellate court"]), we agree with Kevin that Sheila misinterprets the order as applying retroactively beyond May 1, 2019.  The court vacated the *Ostler/Smith* order going "forward" in view of its factual finding that Kevin had no further income subject to *Ostler/Smith* division, a point Sheila does not contest.

12

Sheila points out in reply that the court's order does not mention any accrued *Ostler/Smith* bonus support or any calculations of offsets. The family court's silence on the issue supports our conclusion that the court did not eliminate *Ostler/Smith* payments, if any, accrued and owed before May 2019. Our conclusion and Kevin's concession that the court's order does not eliminate any such support payments retroactively beyond May 1, 2019, resolves Sheila's contention regarding retroactive jurisdiction. We do not decide whether Kevin did or did not have outstanding *Ostler/Smith* payments or calculate the amount, if any, of such outstanding payments.

C. *Exclusion of RSU's*

The family court's statement of decision as to Kevin's RSU's provides: "The minute order prepared by the court clerk on June 22, 2018, after trial on reserved issues, reflects Judge Epley ordered RSU[']s NOT be included in either parties['] income for support and, as to any current or further vested RSU[']s, the community portions were to be divided equally between the parties. This order applies to all RSU[']s and any RSU[']s received post separation. In addition to reviewing all the minute orders in this case (except those from hearings presided over by Judge Robert Amador), the court considered the testimony of Sheila, Kevin and Meredith Ross, the received exhibits, and closing arguments. [¶] . . . Based upon Judge Epley's order regarding the RSU[']s, as reflected in the minute order of June 22, 2018, this court does **not** include them for purposes of calculating support."

Sheila contends the family court exceeded its jurisdiction by retroactively excluding all of Kevin's RSU's for purposes of child and spousal

13

support.[10] She admits that "to the extent any community property interest continued in Kevin's vested RSU[']s, it would not be subject to inclusion as income for support purposes . . . ." But Sheila maintains there is no evidence to support the conclusion that the RSU's were community property; she asserts the "unequivocal" evidence is that the RSU's were Kevin's separate property. According to Sheila, Kevin's position that the RSU's were not included as income is contradicted by the *Ostler/Smith* provision of the judgment, pointing out it applied to " 'any income' above [Kevin's] base income," and the correction that applied the provision to " 'monthly gross income.' " (Bold and italics omitted.) Sheila argues that in ruling on Kevin's request to calculate overpayments, the court was obligated to determine the amounts owed between the parties at the time of Kevin's motion, and that Kevin conceded he owed amounts under *Ostler/Smith* whether the court did or did not include his RSU's. Citing *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269 (*Cheriton*) and *In re Marriage of Macilwaine* (2018) 26

---

[10] Sheila seems to suggest the family court erred by relying on the June 22, 2018 minute order rather than the December 2018 judgment. But in its order the court did not say it did not rely on the December 2018 judgment; rather, it specifically acknowledged that judgment in ruling on the RSU's. In any event, Sheila does not explain how the minute order and judgment materially differ.

Cal.App.5th 514 (*Macilwaine*) without further discussion or application,[11] she argues the court's exclusion of Kevin's RSU's as income was "plain error."

We are not persuaded. Sheila misreads the court's December 2018 judgment, which deemed Kevin's RSU's to be property and "not income" before discussing the *Ostler/Smith* application to "any income" Kevin earned over a specified amount. Sheila gives us no basis to conclude the family court in the December 2018 judgment intended to use, or we should apply, a different interpretation of the word income in the *Ostler/Smith* provision of the judgment as including Kevin's RSU's. Whether terms in the judgment should be used differently would be a question of law for this court under settled contract interpretation principles. (See *Fox v. Fox* (1954) 42 Cal.2d 49, 52-53; *Dow v. Lassen Irrigation Co* (2022) 79 Cal.App.5th 308, 326.) Though Sheila cites law that a reviewing court construes de novo an ambiguous judgment or order, she does not undertake a meaningful analysis of the question.

Setting Sheila's misinterpretation aside, there is no indication in the record that Sheila challenged or appealed the family court's December 2018 determination as to Kevin's RSU's. The family court's June 2021 modification order did not revisit or decide anew the classification of Kevin's

_____

[11] Sheila later quotes *Macilwaine* for the proposition: "It is well-established that stock options granted as part of a parent's employment compensation constitute 'income' as defined in section 4058, subdivision (a), and must be used to calculate support." (*Macilwaine, supra*, 26 Cal.App.5th at p. 530, citing in part *Cheriton, supra*, 92 Cal.App.4th at pp. 286-288.) She also points out that *Macilwaine* was decided two months after the June 2018 minute order. But Sheila had the benefit of *Macilwaine* when the court issued its December 2018 judgment. Sheila's authority for the bare proposition that stock options are income for purposes of support could have been raised in a challenge to the December 2018 judgment.

15

RSU's or even pass on them retroactively; faced with interpreting the December 2018 judgment, the court merely found it determined Kevin's RSU's, including those received post separation, were not to be considered income available for support. The court could not revisit that previously decided issue. (See *In re Marriage of Oliverez* (2015) 238 Cal.App.4th 1242, 1248 [with narrow exceptions, a trial court judge may not reconsider and overrule the interim ruling of another judge].) Nor did Kevin ask the court to revisit the issue anew in his modification petition.

Nothing about Kevin's position below compels us to reverse the family court's order as to Kevin's RSU's. He did not concede his RSU's could be considered income for purpose of calculating his *Ostler/Smith* payments. In his trial brief, Kevin maintained Judge Epley's December 2018 judgment determining his RSU's were not income was "intended to be applied to future [*Ostler/Smith*] calculations" and asked "the same characterization be applied to the RSU[']s in the findings for his current spousal support modification requests as that has always been his understanding of the court's order and the basis for his payments [postjudgment]." (Some capitalization omitted.) He asserted Judge Epley's determination "applies to all RSU[']s and any RSU[']s he received [postjudgment] are his property and not to be considered income for support purposes" and "[a]s such, [he did] not believe he received income which would require [*Ostler/Smith*] division."

Though Kevin went on to take a position "in the event" the court ruled RSU's were income for support purposes, he did not advocate for that position, and explained during the hearing via counsel that whether he had made overpayments to Sheila during the period from May 2019 forward was related to how the court would interpret the prior orders. The record shows Kevin's counsel pointed out that Kevin and Sheila "radically" differed in their

16

interpretation of the *Ostler/Smith* provision of judgment, which the court was going to have to make retroactive. The court responded, "[I]t would be useful for the court to hear testimony and receive evidence on the method by which the court should interpret the [*Ostler/Smith*] order that was made by Judge Epley." Kevin testified that he did not make any *Ostler/Smith* payments by the second quarter of 2019 because using only his commission and bonus income, he did not exceed the *Ostler/Smith* threshold, but that disputes had arisen over the *Ostler/Smith* calculations as to whether restricted stock should be included. Kevin explained his position was that, based on Judge Epley's classification of the RSU's in the judgment, the RSU's were his separate property and were not included.

The family court ultimately adopted Kevin's interpretation of the judgment as not including Kevin's RSU's as income for purposes of calculating support, including the *Ostler/Smith* payments. As stated, Sheila does not meaningfully explain with legal analysis how the court erred by that interpretation. Sheila has not demonstrated the court lacked jurisdiction to make its order.

## IV. *Exclusion of Kevin's RSU's*

In related arguments, Sheila contends the court prejudicially erred by excluding Kevin's RSU's for purposes of calculating support. She correctly points out that Kevin's request for order did not ask the court to make a determination on the RSU's. Nevertheless, asserting *Macilwaine, supra,* 26 Cal.App.5th 514 and *Cheriton, supra,* 92 Cal.App.4th 269 establish that stock options "must be used" to calculate support, Sheila argues the court erroneously (1) excluded a substantial amount of Kevin's restricted stock income (assertedly exceeding $500,000 over the duration of Kevin's severance period) in calculating child support; (2) improperly relied on the June 2018

17

minute order, which was outside the record, resulting in a "failure of procedural due process"; and (3) implemented the *Ostler/Smith* bonus provision of the judgment, which applied to "any income" above Kevin's base income as well as the court's correction of the judgment as to "monthly gross income," contrary to the public policy stated in *Macilwaine*. Sheila explains that she is not contesting removal of the *Ostler/Smith* provision going forward, but challenges the "findings that Kevin had no income subject to the existing *Ostler/Smith* bonus support provisions before the trial court's retroactivity jurisdiction on [June 1, 2019,] and[ ] the trial court's exclusion of RSU income as income available for application of the *Ostler/Smith* bonus support provisions after the trial court obtained modification jurisdiction."

We are again unpersuaded for the reasons set forth above. Sheila's argument that *Macilwaine* should have compelled the family court to treat Kevin's RSU's as income for calculating child and spousal support would have had the court improperly reconsider Judge Epley's December 2018 judgment determining Kevin's RSU's were not income. And, as stated, Sheila has not demonstrated Judge Epley intended a different meaning of the word income in the *Ostler/Smith* provision of the judgment as somehow including Kevin's RSU's. We have already held the family court in its order as to Kevin's RSU's did not rely on the June 2018 minutes "to the exclusion" of the December 2018 judgment. It considered Kevin's testimony as to how he understood the court treated the RSU's in the judgment, and interpreted the judgment in Kevin's favor. Sheila's arguments do not demonstrate the court erred in its postjudgment modification order as to the RSU's.

18

V. *Determination of Kevin's Income Available for Support*

A. *Court's Order Regarding Kevin's Income*

In its modification order, the family court addressed Kevin's income, including from his new business, Restoration RX, as follows:

"There were several inconsistencies in Kevin's testimony and in his income and expense declarations . . . filed since 2020 which troubled the court and made his assertions regarding income from Restoration RX unreliable.

"Kevin's most recent [income and expense declaration] from March 16, 2021, indicates he receives $1824 from wages, $4630 from dividend and interest and $3947 from other sources.  There is no indication from what source the $3947 comes.  Kevin did not total his monthly expenses in [No.] 13 of [h]is [income and expense declaration], but if they are added up, they amount to $7530.  Kevin's [income and expense declaration] filed December 3, 2020[,] indicates Kevin receives $4092 from self-employment.  His monthly expenses come to $9464, which includes $1489 for [an] equipment lease.  No other debts are listed in either of the two [income and expense declarations].

"The court did not find Sheila's argument persuasive that income from Restoration RX should be imputed to Kevin in the amount of $19,321 monthly.

"Given the lack of persuasive evidence presented by either party on the issue of Kevin's current income, the court imputes monthly income to Kevin in the amount of $7730,[12] which represents Kevin's approximate monthly

---

[12]     It is not clear whether the court added $200 to Kevin's reported monthly household expenses so as to approximate his earnings, or whether the $7730 figure is a typographical error, as his March 2021 monthly expenses total $7530.  Kevin in any event argues $7730 is a reasonable attribution of income to him.

household expenses. This figure shall be used for purposes of calculating support effective November 2020."

B. *Contentions*

Sheila contends the family court prejudicially erred when it reached this determination of Kevin's income available for support. She first argues it abused its discretion by imputing income without an express finding supported by substantial evidence that imputation would benefit their children. She further contends the court impermissibly placed the burden on her to demonstrate Kevin's income, while Kevin assertedly never presented direct evidence of his income during his case in chief. Finally, she contends the court's findings as to Kevin's income are not based on the most current and reliable evidence of recent and predictable future income, including Kevin's tax returns, which it should have considered presumptively correct.[13] She maintains the order should be "reversed without remand" as Kevin did not meet his burden.

Kevin responds that the court's determination of his income available for support was within its discretion. He maintains that because Sheila did not trust any amount of income he claimed and the court found his income difficult to ascertain, it used a reasonable alternative by attributing the average amount of his monthly expenses paid without assistance as an amount the court knew Kevin could earn.

C. *Analysis*

1. *Children's Best Interests*

We reject Sheila's argument that the court's order should be reversed due to the absence of an express finding concerning the children's best

---

[13] Sheila does not contend the evidence showed Kevin was avoiding employment so as to shirk his support obligations.

20

interests. It is true any imputation of income must be accompanied by a best interests finding. (§ 4058, subd. (b); *In re Marriage of Ficke* (2013) 217 Cal.App.4th 10, 18-19; *In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1051, fn. 3; *In re Marriage of Mosely* (2008) 165 Cal.App.4th 1375, 1389.) But while *Ficke* refers to the need for an "express" finding (*Ficke*, at p. 13) we do not agree that the finding must be express. (See *Cheriton, supra,* 92 Cal.App.4th at p. 301 ["court made no express *or implied* finding that imputing income to [custodial parent] would be in children's best interest," italics added]; see also *In re Marriage of Lim and Carrasco* (2013) 214 Cal.App.4th 768, 777 [substantial evidence supported the court's "implicit finding that it was not in the children's best interest to impute earning capacity to [mother] based on her previous income as a full-time law partner"].) Section 4058 provides that a court "may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children . . . ." (§ 4058, subd. (b)(1); accord, *In re Marriage of Barth* (2012) 210 Cal.App.4th 363, 375.) The statute does not require either a written finding or a finding on the record. (Compare *In re J.S.* (2011) 196 Cal.App.4th 1069, 1078 [express finding necessary where statute at issue required the court to make a " 'finding either in writing or on the record of the basis for its determination' "].)

Here, in objecting to the family court's ex parte minute order, Sheila argued any modification of child support not based on actual income (including the court's adoption of a prior order imputing income to her) had to be supported by a finding such imputation was in the children's best interests. She cited case law, including *Cheriton, supra,* 92 Cal.App.4th 269, *In re Marriage of Ficke, supra,* 217 Cal.App.4th 10 and others referenced above, for that proposition. Accordingly, the family court, which stated it had

21

considered her objections, was well aware of its obligation to consider the children's best interests, and when it issued its final order, it implicitly found imputation of income *was* in their best interests.

The question becomes whether the evidence, viewed in the light most favorable to the prevailing party (*In re Marriage of Lusby*, *supra*, 64 Cal.App.4th at p. 472; *In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 34), supports this implied finding. The best interests determination includes the "overall welfare and developmental needs of the children, and the time that parent spends with the children." (§ 4058, subd. (b); see, e.g., *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955-956 [children's best interest includes consideration of children's health, safety, and welfare].) When it comes to imputing income to a parent, best interests necessarily includes how imputation impacts the children's necessary monetary support in light of these considerations.

Sheila does not directly address the point. She summarizes Kevin's testimony concerning his income after his job was terminated (including from unemployment benefits) and decision to open a new business. She summarizes Kevin's reported income and expenses from 2019 and 2020, as well as his credit card payments, payments from his new business's checking account, and deposits into that account. She summarizes information from Kevin's 2021 income and expense declaration that he was ordered to submit during trial and admitted into evidence, as well as his personal and business tax returns. But she does not explain with reasoned argument concerning the children and their needs how the record is lacking evidence that it was consistent with their best interests to ascribe Kevin—an owner of a relatively new business—an earning capacity equal to his monthly expenses for purposes of imputing income for support. Whatever her burden in the trial

22

court, here as set forth above it is her burden as the appellant to affirmatively show error. We do not address the point further.

2. *Burden of Proof*

Nor are we convinced the family court improperly placed an evidentiary burden upon Sheila to prove Kevin's income. The sole indication she cites is the court's statement that it was not persuaded by her argument that it should impute over $19,000 in income to Kevin from Restoration RX. As we have explained, the family court's order is presumed to be correct on appeal (*In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 311-312) and we presume the court properly performs its judicial duty applying the correct statutory and case law. (*In re Marriage of Davenport, supra*, 194 Cal.App.4th at p. 1526.) On his modification request, it was Kevin's burden to establish changed circumstances, including related to his income, so as to warrant changes in the prior support orders. (*In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 537; *In re Marriage of Cryer*, *supra*, 198 Cal.App.5th at p. 1054.) The family court is presumed to have applied this standard. Reasonably reading the order, the court made a credibility determination; we see no indication, and Sheila has not demonstrated, the court required Sheila to demonstrate Kevin's income on Kevin's modification request and thereby misallocated the burden of proof.[14]

3. *Determination of Kevin's Income for Calculating Support Effective November 2020*

We turn to the court's determination of Kevin's income for purposes of calculating support effective November 2020. Sheila does not address the

---

[14] We observe it was Sheila's counsel who admitted Kevin's income and expense declarations into evidence during Kevin's cross-examination. There is no indication from the record it was at the court's direction or expectation.

differing standards applicable in setting spousal and child support. (See *In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1445 & fn. 2.)[15] As stated, she argues the court "refuse[d] to consider the most recent and appropriate evidence of [Kevin's] income" and should have considered his personal and Restoration RX tax returns as presumptively correct. According to Sheila, Kevin confirmed his 2020 personal tax return reflected $43,649 in wages and $55,565 in dividend income as well as $47,369 in K-1 income from Restoration RX. She points to his testimony that he received $21,894 in salary from the company in December 2020. She says Kevin testified that his pass-through income, wages, and a $15,000 depreciation expense, added back to his income, exceeded $84,000 for 2020. From this, she maintains the court should have found Kevin's income available for support to be in excess of $20,000 per month. We note that, for his part, Kevin testified that the dividend income was a "one-time special dividend" from his former employer being purchased by another company. He explained the $43,649 in wages was a combination of his severance pay and the $21,894 in wages from Restoration RX. Kevin deferred to his accountant regarding the depreciation expense.

---

[15] For spousal support, the relevant statute does not define or address computation of income; the court must "assess 'the ability of the supporting spouse to pay . . . taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.' " (*In re Marriage of Blazer*, *supra*, 176 Cal.App.4th at p. 1445, quoting § 4320, subd. (c); see also *In re Marriage of Simpson* (1992) 4 Cal.4th 225, 231 [under former Civil Code section 4801].) The child support statute defines income broadly as " 'income from whatever source derived' " including " '[i]ncome from the proprietorship of a business, such as gross receipts from the business reduced by expenditures required for the operation of the business.' " (*Blazer,* at p. 1445, fn. 2.)

24

We review the trial court's determination of spousal support and child support for abuse of discretion, but " 'discretion must be exercised along legal lines, taking into consideration the circumstances of the parties, their necessities and the financial ability of the [supporting spouse.]' " (*In re Marriage of Laube* (1988) 204 Cal.App.3d 1222, 1225.) We must determine whether the court's decision is both supported by substantial evidence and legally proper. (*In re Marriage of Blazer*, *supra*, 176 Cal.App.4th at p. 1447, see also *id.* at p. 1448 [court " 'exercised its discretion along legal lines' " in making its determination concerning husband's income].) "[I]n the face of an ambiguity as to whether disputed sums represent income available for support, that determination is committed to the court's discretion." (*Id.* at p. 1448.)

Here, while the court's determination of Kevin's monthly expenses is supported by substantial evidence, namely Kevin's March 2021 income and expense declaration, we are not persuaded that imputation of the amount of Kevin's monthly expenses as "income" for purposes of support is legally proper. Plainly, the family court was not persuaded by either parties' testimony as to Kevin's actual income. In the event the court did not look to Kevin's actual income, it possessed discretion to base its support award on his earning capacity. (*In re Marriage of Simpson*, *supra*, 4 Cal.4th at p. 232 [the "statutory guidelines governing the determination of spousal and child support authorize the trial court in its discretion to consider the earning capacity as well as the actual income of the supporting spouse in determining support, but they do not specify or limit the circumstances under which the trial court may look to earning capacity in addition to, or in place of, actual income in fixing support"]; *In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 642 [family court "may, in its discretion, impute to that parent an

25

income different from his or her actual income—i.e., an income amount that corresponds with that parent's earning capacity"].) But while earning capacity is not defined, we are not persuaded it is properly approximated by looking to average monthly expenses. "The statutory guidelines for the determination of support do not provide a specific definition of earning capacity. Statutory references, however, to the measure of a spouse's ability to obtain employment [citation], as well as appellate decisions defining earning capacity in various contexts [citations], suggest that for purposes of determining support, 'earning capacity' represents the income the spouse is reasonably capable of earning based upon the spouse's age, health, education, marketable skills, employment history, and the availability of employment opportunities." (*In re Marriage of Simpson*, *supra*, 4 Cal.4th at p. 234; *In re Marriage of Lim and Carrasco*, *supra*, 214 Cal.App.4th at p. 775; *In re McHugh* (2014) 231 Cal.App.4th 1238, 1246 [earning capacity is composed of ability to work, including such factors as age, occupation, skills, education, health, background, work experience and qualifications, and opportunity to work, i.e. a " 'reasonable "likelihood that a party could, with reasonable effort, apply his or her education, skills and training to produce income" ' "].)

Having found Kevin failed to present credible evidence as to the amount of income he earned, it was well within the family court's discretion to impute income to him. (See *In re Marriage of Barth*, *supra*, 210 Cal.App.4th at p. 377 [family court "had no choice but to impute income" to husband where he understated his income, included personal expenses as business expenses, and was found not credible on "any issue relating to his finances"].) But the amount the court imputed to Kevin as income was not based on the sort of factors that go into earning capacity—his age, education, skills, employment history or employment opportunities as delineated

26

above—but on his average monthly expenses, an approximation we consider arbitrary. A support order should not be "eyeball[ed]" to produce an imputed amount without sufficient evidentiary support. (See *In re Marriage of Loh* (2001) 93 Cal.App.4th 325, 327, 330.) The court's approximation of Kevin's earning capacity by equating it to his monthly expenses for purposes of calculating support effective November 2020 fell outside the scope of its discretion.

We conclude the record fails to establish the court properly determined Kevin's income for support purposes in accordance with proper standards. We direct the trial court to apply the principles set forth above and again exercise its discretion in determining appropriate awards of spousal and child support effective November 2020. In making its redetermination, the court is not prevented from revisiting its credibility determinations, including with respect to Kevin's testimony as to his projected net income from Restoration RX, or relying on Kevin's reported income on tax returns, considering whether Kevin rebutted any presumption of correctness. (Accord, *M.S. v. O.S.* (2009) 176 Cal.App.4th 548, 557 [parent's gross income as reported under penalty of perjury on recent tax returns is considered presumptively correct for purposes of child support], but see *In re Marriage of Hein, supra,* 52 Cal.App.5th at p. 541 [distinguishing *M.S. v. O.S.* as not involving a "self-employed parent who had organized his or her business or businesses into multiple wholly owned entities" and indicating presumption of correctness of tax returns may be rebutted by other evidence].) We express no opinion regarding the proper amount of support.

VI. *Order Reducing and Terminating Permanent Spousal Support*

Though we direct the court to recalculate support in accordance with the principles expressed above, we perceive no error with regard to its order

27

reducing and terminating permanent spousal support. We thus uphold that portion of the order even though the court's recalculation may modify the decreasing support amounts.

In its order relating to permanent spousal support, the court made findings on the section 4320 factors, including as to Kevin's income and assets; Sheila's income, assets, and lack of evidence of her efforts to become self-supporting; whether Sheila's ability to work would interfere with their children's best interests; the parties' ages; and the balance of hardships, finding Kevin "has been paying spousal support since November 2014, over [one half] the length of the marriage" and "has continued to pay spousal support through the pendency of this action." In part, the court found "Sheila was imputed $2333 monthly pursuant to the judgment and was given a *Gavron* warning. Previously, on June 22, 2018, the court found Sheila's efforts ineffective in following through with the recommendations of the vocational evaluator and previous *Gavron* warning to make the business more profitable. Moreover, there was little evidence presented in this present action to suggest from 2018 up until March 2020, that Sheila made sincere efforts to increase her income to achieve the goal of becoming self-supporting. According to Sheila's most recent [income and expense declaration], she is earning $14 an hour working 30-40 hours a week at Skin Care Enterprise. Sheila receives $1964 per month as [a] dividend for her Alaskan heritage. Sheila has $240,000 in stocks and bonds that she could easily sell, and $844 in cash and checking/savings. Sheila's monthly expenses are approximately $8400. Sheila will also receive her community property interest in the retirement accounts valued at over $700,000 at the end of 2020."

The court "[b]ased on the above factors" gradually decreased the amount of spousal support, setting monthly spousal support at $900 for May

2019 through February 2020, $500 for March 2020 to January l, 2023, and $250 beginning January l, 2023. It reserved jurisdiction over spousal support "until January 1, 2024[,] at which time spousal support will be set at $0 and jurisdiction over spousal support shall terminate."

Sheila challenges this order, contending the court erred by effectively imputing a significant amount of income and earning capacity to her without a finding as to how it expected her to become self-supporting before stepping down support and terminating its jurisdiction.[16] In a related argument under a separate heading, Sheila contends the court's reduction of spousal support was "patently inequitable, unjust and unreasonable." (Emphasis and some capitalization omitted.) She argues: "[T]he trial court discarded evidence of Kevin's income and expressly reduced permanent spousal support substantially below its express determination of [her] needs. The court found Sheila's monthly expenses were $8,400 and her total income was $4,297,[ ] leaving her more than $4,000 short on a monthly basis. . . . The trial court wholly failed to provide any explanation why it found this result just and

_____

[16] Sheila also argues the court prejudicially abused its discretion because its finding that Kevin had paid permanent spousal support since November 2014 is not supported by substantial evidence. But this mischaracterizes the court's order, in which it indicated that in balancing the hardships, it considered that Kevin had been paying spousal support since the parties' separation in 2014 and had continued to pay spousal support through the pendency of the action. The court did not specify that Kevin had been paying permanent support since that time. Sheila also complains the family court "adopted a previous finding that she had not used sufficient efforts to make [her business] more profitable" even though both parties testified she lost her business posttrial. Again, this latter argument misconstrues the court's order, which simply pointed out the history of Sheila's inadequate efforts to become self-sufficient, including by mentioning that Judge Epley had found she had not made efforts to make her business more profitable.

reasonable when it also specifically recognized the great disparity in assets and that 'Kevin's business is doing well.' "

The law authorizes a family court " 'to order a party to pay spousal support in an amount, and for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances set forth in section 4320.' [Citations.]  The statutory factors include the supporting spouse's ability to pay; the needs of each spouse based on the marital standard of living; the obligations and assets of each spouse, including separate property; and any other factors pertinent to a just and equitable award.  (§ 4320, subds. (c)-(e), (n).)" (*In re Marriage of Deluca* (2020) 45 Cal.App.5th 184, 195.)  Once the court considers these factors, " ' "the ultimate decision as to amount and duration of spousal support rests within its broad discretion and will not be reversed on appeal absent an abuse of that discretion.  [Citation.]  'Because trial courts have such broad discretion, appellate courts must act with cautious judicial restraint in reviewing these orders.' " ' " (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 424, quoting *In re Marriage of McLain* (2017) 7 Cal.App.5th 262, 269.)

We perceive no abuse of the court's broad discretion in the step-down order.  Notably, Sheila does not contend the record is absent evidence of a material change in circumstances so as to warrant a modification of spousal support.  (*In re Marriage of Minkin, supra,* 11 Cal.App.5th at p. 956; *In re Marriage of Shaughnessy* (2006) 139 Cal.App.4th 1225, 1245.)  She does not contend the family court failed to consider the section 4320 criteria in making its order.  (*Minkin*, at pp. 956-957.)  A step-down order informs "each spouse that the supported spouse has a specified period of time to become self-supporting, after which the obligation of the supporting spouse will cease.

. . . However, if things do not work out as contemplated, the supported spouse can, upon a showing of good cause, request a change in the original order as to amount or as to the term for jurisdiction over the issue of spousal support. [The order] psychologically prepares the supported spouse for the time when he or she must be self-supporting. It also places the burden of showing good cause for a change in the order upon the one who is most able to exercise the control necessary to meet the expectations the trial judge had in making the order." (*In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 665-666; see also *in re Marriage of West* (2007) 152 Cal.App.4th 240, 248 [step-down order did "not prevent [wife] from obtaining spousal support above the amount ordered, or after [the date it was reduced to zero]" but "shift[ed] the burden of showing changed circumstances [to wife, who] would be entitled to seek a modification because of an unrealized expectation of her future earnings"].) When a step-down order results from a court finding of changed circumstances warranting a downward modification of support, "the evidence need not show that the supported spouse will have a decreased need on the future step-down date." (*In re Marriage of Rising* (1999) 76 Cal.App.4th 472, 478, 479.) "The critical inquiry . . . is whether the step-down provision, standing alone, is supportable given the parties' circumstances at the time the order was made." (*Cheriton, supra,* 92 Cal.App.4th at p. 311.)

In making her arguments, Sheila ignores the family court's observations about her years of unsatisfactory efforts to become self-supporting and the fact she had been given two warnings under *Gavron* to make those efforts. The family court pointed out that in 2018, Judge Epley found Sheila was ineffective in following through with a vocational evaluator's recommendations and previous *Gavron* warning to make her

business more profitable. It found there was "little evidence" suggesting that from 2018 to March 2020 Sheila made "sincere efforts to increase her income to achieve the goal of becoming self-supporting." Sheila cites authority for the proposition, "When the ability to work or the opportunity to work is lacking, earning capacity is absent and application of the [earning capacity] standard is inappropriate." (*In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212, 1218.) But Sheila points to no evidence she was unable or lacked opportunity to work; rather, the court found she worked 30 to 40 hours a week at a skin care business, a finding she does not challenge. The record shows while Sheila received years of spousal support she did not make sincere efforts to increase her income despite her undisputed ability to work. The court's order—in which it considered all of the relevant statutory factors and in fact declined to impute any higher income to Sheila than had previously been ordered—was plainly intended to provide her an incentive to develop her own skills and career. In doing so, the court acknowledged Sheila had income and other assets ($240,000 in stock and bonds, as well as a community property interest in a retirement account) apart from spousal support. On this record, it did not abuse its discretion.

Nor do we find any abuse of discretion in the court's order terminating jurisdiction. In certain cases it is appropriate for the court to terminate jurisdiction over spousal support, even though there has been a lengthy marriage. (See *In re Marriage of Prietsch & Calhoun, supra*, 190 Cal.App.3d at pp. 661-662; § 4336, subd. (c) ["Nothing in this section limits the court's discretion to terminate spousal support in later proceedings on a showing of changed circumstances"].) Indeed, the court has a duty to fix a termination date where justified after considering the relevant factors. (*Prietsch & Calhoun,* at p. 664.) " '[The statutory factors] will not require a trial court to

retain jurisdiction in every case involving a lengthy marriage. In some instances the record will indicate that both spouses are employed, an increasingly prevalent situation today, or that there are sufficient assets available to enable each to provide for his or her needs. In that event, no support or support for only a limited time, without a retention of jurisdiction, would be appropriate.' " (*Id*. at p. 662.)

Sheila relies on the following language from *In re Marriage of Morrison* (1978) 20 Cal.3d 437—a case involving an original support order not a modification order as here—regarding the retention of jurisdiction: "A trial court should not terminate jurisdiction to extend a future support order after a lengthy marriage, unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction. . . . If the record does not contain evidence of the supported spouse's ability to meet his or her future needs, the court should not 'burn its bridges' and fail to retain jurisdiction." (*Morrison*, at p. 453.) She maintains the order must be reversed because the record does not contain evidence that she will be able to adequately meet her financial needs at the time selected for termination of jurisdiction. We disagree.

After the statement from *Morrison* on which Sheila relies, the Supreme Court continues, explaining that the above-quoted ruling "will not require a trial court to retain jurisdiction in every case involving a lengthy marriage." (*In re Marriage of Morrison, supra*, 20 Cal.3d at p. 453.) To the contrary, the family court continues to maintain the discretion to award—as the court did here—"no support . . . *without a retention of jurisdiction*." (*Ibid.*, italics added.) "Where jurisdiction has been retained in the original order, future modification hearings may well reveal that the supported spouse . . . has delayed seeking employment, or has refused available employment. At that

33

time, the court may appropriately consider such factors in deciding whether or not to modify its original order." (*Ibid.*, citing *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 896 [in modification proceedings, the family court may consider evidence that the supported party "has unreasonably delayed or refused to seek employment consistent with his or her ability"].)

Thus, the general rule disfavoring termination of jurisdiction on which Sheila relies is subject to an exception, in the court's discretion, where the supported spouse has shirked an obligation to become self-supporting. (*In re Marriage of Morrison, supra*, 20 Cal.3d at p. 453.) Here, the court applied this exception, observing Sheila did not make efforts to comply with *Gavron* warnings. It did not abuse its discretion.

We finally reject Sheila's contention that the court's step-down order and termination of jurisdiction is unjust and inequitable. In making this argument, Sheila inserts an isolated quote from *In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1316 [This is not a " 'just and reasonable result under the facts and circumstances of the case' "] and summarizes some of the facts and holding of *Ciprari, supra*, 32 Cal.App.5th 83, suggesting the court's order did not consider her needs or the marital standard of living. The contention fails to acknowledge express findings by the family court as to these factors, and disregards the court's observations about her years of unsatisfactory efforts to become self-supporting. Under the circumstances we cannot say, and Sheila has not shown, the court's order is unjust and inequitable.

## VII. *Sanctions Order*

### A. *The Court's Order*

Observing Kevin had incurred over $100,000 in postjudgment attorney fees and Sheila had incurred over $150,000, the family court ordered Sheila

to pay Kevin $35,000 in section 271 sanctions, finding "Sheila's conduct throughout the instant litigation frustrates the policy of the law to promote settlement of litigation and reduce the cost of litigation." The court found: "The level of litigation related to Kevin's [postjudgment] motion is excessive and, to a large extent, was avoidable. . . . Sheila's behavior in this litigation prevented the retirement account from being divided in a prompt manner. Additionally, it appears to this court that the issues surrounding the RSU[']s could have been easily resolved either by stipulation or by a plain reading and interpretation of the unambiguous orders issued by Judge Epley. Sheila issued over 19 formal discovery documents and filed several ex parte requests based upon her untimely propounding of discovery. On November 6, 2020, Judge Sheibani found Sheila did not use diligence in serving Kevin with her discovery requests which resulted in additional court time and attorney fees. Further evidence of Sheila's efforts to undermine public policy is the timing of her filing of the contempt action against Kevin (which was ultimately withdrawn)." The court concluded "[i]t appears . . . that at every turn Sheila pursed the most aggressive litigation tactic rather than sincere efforts at resolution of the issues[.]"

B. *Legal Principles and Standard of Review*

"[S]ection 271, subdivision (a) provides the trial court with authority to order the opposing party to pay attorney fees and costs in the nature of a sanction when 'the conduct of each party or attorney . . . frustrates the policy of the law to promote settlement of litigation . . . .' " (*In re Marriage of Sorge,*

*supra*, 202 Cal.App.4th at p. 652.)[17]  The statute " 'advances the policy of the law "to promote settlement and to encourage cooperation which will reduce the cost of litigation." ' " (*Ibid*.)

We review the court's sanctions order for abuse of discretion. (*In re Marriage of Sorge*, *supra*, 202 Cal.App.4th at p. 652.)  Under this standard, we accord broad deference to the lower court and overturn its order only if, considering all the evidence viewed most favorably in its support, no judge could reasonably make it.  (*Ibid*.; *Ed H. v. Ashley C.* (2017) 14 Cal.App.5th 899, 904.)  Stated another way, we ask if the court " 'exceeded the bounds of reason' " in making its order. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319 [" 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason' "]; *In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598 ["it is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered"].)  In our review, we must indulge all reasonable inferences to uphold the court's order. (*In re Stephanie M.*, at p. 319 [" 'When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for

17    Section 271 provides in part:  ". . . . [T]he court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.  An award of attorney's fees and costs pursuant to this section is in the nature of a sanction.  In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities.  The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed.  In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award." (§ 271, subd. (a).)

that of the trial court' "]; *Sorge*, at pp. 652-653.) We review findings of fact forming the basis for the sanctions award for substantial evidence. (*Id*. at p. 653.)

C. *Contentions*

Sheila contends the court abused its discretion in making the sanctions award. She maintains the court did not account for the fact she had opposed Kevin's requests to continue the hearing, which prolonged the litigation, and did not consider her and Kevin's efforts to settle in advance of trial. According to Sheila, Kevin's sanctions request is "forum-shopping to a res judicata determination" (italics omitted) because in December 2020 a different superior court judge had denied Kevin's request for sanctions based on some of the same conduct relied upon by the family court in making the order presently on appeal. Sheila argues for various reasons the underlying conduct on which the court relied in its sanctions order is not sanctionable. She does not meaningfully challenge the amount of sanctions the court awarded or argue it placed an unreasonable financial burden on her. (§ 271, subd. (a).)[18]

Kevin responds that sanctions were warranted. He points out he outlined Sheila's conduct in his motion, in which he asserted under penalty of perjury she engaged in "obstreperous behavior that frustrated, hindered, and delayed these proceedings" and engaged in "aggressive litigation tactics over

_____

[18]    As to one aspect of the court's sanctions ruling relating to Sheila's lack of diligence in serving discovery, Sheila argues Kevin ascribed roughly $4,500 to his expenses but asked for $7,000 in sanctions to discourage her behavior. She cites authority holding that section 271 sanctions "must be tethered to attorney fees." While the proposition is correct, Sheila's argument is undeveloped. In making it she does not acknowledge the other aspects of the court's ruling or address whether the $35,000 award was or was not tethered to Kevin's attorney fees incurred.

a more productive settlement mentality." He disputes that his sanctions request was previously litigated or that Sheila's discovery was legitimately directed at ascertaining his income.

D. *Analysis*

Under the above-referenced review standards, it is not our role to determine, in the first instance, whether sanctions are warranted for Sheila's conduct and substitute our judgment for that of the trial court. (See *In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 384.) The family court was in the best position to evaluate whether, as a whole, Sheila's conduct frustrated the policy of promoting settlement and unnecessarily increased the cost of litigation. We simply ask whether, indulging all inferences in Kevin's favor, the family court's findings are supported by the record and its order within the bounds of reason. Undertaking this analysis, we conclude the family court did not abuse its discretion.

The record amply supports a conclusion that Sheila's litigation tactics and conduct subverted settlement and prolonged the litigation. That the record may show Kevin sought continuances of the proceedings does not mean it lacks evidence to support the family court's findings as to delays caused by Sheila's litigation conduct. (See *In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 473 [" ' "If . . . substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion," ' " italics omitted].) With respect to division of the parties'

retirement accounts, the record contains Kevin's sworn assertions as to how Sheila's behavior caused delays.[19]

We reject Sheila's argument that res judicata somehow barred the court from awarding Kevin sanctions based on this behavior. First, Sheila's contention lacks legal authority and cogent legal argument. Second, her record citations are to the court's order denying Kevin's December 2020 request for sanctions without explanation of the basis for its order, or to Kevin's testimony acknowledging his sanctions request was denied. Considering the point in any event, we may infer that the court in December 2020 declined to award sanctions for Sheila's asserted failure to provide proof of her separate property interest in the retirement accounts, not on the basis of her broader delay tactics.

Further, as explained above, the December 2018 judgment determined Kevin's RSU's would not be treated as income; the family court in making the present sanctions order reasonably characterized Judge Epley's order as "unambiguous" and suggested that Sheila should have resolved the matter by stipulation or a plain reading of the order. The conclusion is not outside the bounds of reason. It is not enough for Sheila to reassert her failed contentions that the family court in its modification order relied on minutes rather than the judgment and erred by deciding RSU's were not income.

---

[19]    In the papers supporting his prior sanctions motion, Kevin asserted under penalty of perjury: "Sheila has continuously asserted she has a separate property claim to our retirement accounts that are yet to be divided by Elizabeth Van Clief our joint expert. For over four years Sheila has not provided to our expert her proof of a separate property interest in the remaining retirement accounts. Kevin and his counsel have asked Sheila repeatedly to provide any documentation of a separate property interest to no avail."

In his December 2020 sworn papers, Kevin asserted: "Sheila, through her counsel, issued over 19 formal discovery demands including deposition subpoenas, demand for production of documents, and two noticed depositions. She filed [four] ex parte motions (two based on her untimely propounding of discovery) for a simple post judgment support modification. She filed over four request for order motions in response to the modification request but drafted barely a [three] page mediation brief for mediation with [the commissioner who handled the mediation]." (Some italics and capitalization omitted.)

Sheila does not take issue with these assertions, which show Sheila favored litigation over settlement and provide evidentiary support for the challenged sanctions order. Section 271 "is designed to punish 'a party [who] has unreasonably increased the cost of litigation.'" (*In re Marriage of Blake and Langer* (2022) 85 Cal.App.5th 300, 310, quoting *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1227 and citing *Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178 [court may impose section 271 sanctions for delaying resolution of issues and "wast[ing] the court and the parties' time"].) Rather, pointing out the family court recognized there was a "true need for discovery" as to Kevin's business income and found Kevin's self-employment income unreliable, she asserts "[p]ractically all of [her] discovery was directed at determining Kevin's income available for support." Sheila suggests she should not be "punished for her fruitless discovery efforts in this regard[.]" She compares the situation to that in *Ciprari, supra*, 32 Cal.App.5th 83 in which the court found the wife could not "be faulted" for requiring the husband to trace his separate property and for incurring professional fees to review and litigate the issue. According to Sheila, *Ciprari*'s reasoning

"applies equally to monetary sanctions" under section 271, "which is 'an award of attorney's fees and costs.' "

We are not persuaded. The cited portions of *Ciprari* are to the Court of Appeal's decision that the family court in that case erred by denying the wife's posttrial motion for additional attorney and accountant fees under sections 2030 and 2032. (*Ciprari*, *supra*, 32 Cal.App.5th at pp. 111-113.) Sheila's argument gives us no basis to apply *Ciprari*'s reasoning to the court's section 271 sanctions award in this case, and we decline to do so. Here, the family court was plainly aware of the difficulties in ascertaining Kevin's income and need for some discovery on the point. But it nevertheless found, at least implicitly, Sheila's discovery and ex parte requests were excessive and unnecessarily increased litigation costs. It is not for us to reconsider the court's ruling, we merely ask whether its conclusion in this regard was within the bounds of reason and supported by the record, and we conclude it was.

Also unavailing are Sheila's attacks on the remainder of the family court's reasoning in awarding sanctions. She incorrectly claims Kevin admitted her contempt action was valid and that she voluntarily withdrew it after he complied with his support obligations. The record instead reflects that while Kevin admitted paying his June 2020 support payment toward the end of July 2020 and his July 2020 payment at the beginning of August, he did not admit Sheila's contempt proceeding was valid. He testified Sheila had signed her contempt papers a few days before their mediation hearing and filed them the day after the parties' mediation. Given they had just completed settlement discussions presumably encompassing support issues, Kevin was "absolutely shocked" to learn of Sheila's contempt filing, and it negatively impacted his ability to file legal papers until his counsel could appear on an emergency basis to resolve the matter. He testified Sheila

41

"ultimately dropped" her contempt request, but not in time for him to file pleadings in an attempt to consolidate Sheila's motions in the interest of judicial economy. Sheila argues her conduct was absolutely privileged, but in our view the family court was within its broad discretion to conclude her litigation maneuver was an affront to promotion of settlement and cooperation.

We need not pick apart the remaining conduct on which the family court relied. On the record before us summarized above, the family court did not abuse its broad discretion in finding Sheila "frustrated the policy of the law in favor of settlement, and caused the costs of the litigation to greatly increase." (*In re Marriage of Daniels* (1993) 19 Cal.App.4th 1102, 1106.) Sheila has not established no judge could reasonably make the order. (*In re Marriage of Sorge*, *supra*, 202 Cal.App.4th at p. 652.) We conclude the court did not err by ordering her to pay sanctions under section 271.

VIII. *Attorney Fee Award*

In ordering Kevin to contribute $35,000 toward Sheila's reasonable attorney fees, the court stated: "Sheila requests attorney fees under [section] 2030 in the amount of $155,000. There is a financial disparity between Sheila and Kevin; Kevin's business is doing well; Kevin has substantial separate property assets and has the ability to pay for Sheila's attorney fees. Kevin's representations regarding his income from [his business] have been problematic and there was a true need for discovery. The court closure for several months during the pandemic and subsequent backlog created issues for this case to be decided in a prompt manner. However, the court finds Sheila over[ ]litigated this action and the attorney fee request is excessive. To award Sheila attorney fees in the amount requested would essentially reward her behavior, which would create an injustice."

42

Sheila contends that the court abused its discretion in making this "offsetting attorney's fee award" in her favor. She asserts once the court found disparity of assets favoring Kevin, an award of fees to her was mandatory. Again pointing to *Ciprari, supra*, 32 Cal.App.5th 83, she argues it is inequitable for her to "bear the brunt of the fees because Kevin refused to produce information regarding his income," causing the court to impute income to him equivalent to his monthly personal expenses.

Need-based fee awards in dissolution proceedings are governed by sections 2030 and 2032. (*Ciprari, supra*, 32 Cal.App.5th at p. 111.) Section 2030 " 'permits the trial court to order payment of attorney fees and costs as between the parties based upon their "ability to pay" and their "respective incomes and needs" in order to "ensure that each party has access to legal representation to preserve all of the party's rights." ' [Citation.] '[T]he purpose of section 2030 is *not* the redistribution of money from the greater income party to the lesser income party. Its purpose is *parity*: a fair hearing with two sides equally represented. The idea is that both sides should have the opportunity to retain counsel, not just . . . the party with greater financial strength.' " (*In re Marriage of Nakamoto & Hsu, supra*, 79 Cal.App.5th at pp. 468-469.)

"A court may award fees under section 2030 ' "where the making of the [fee] award, and the amount of the award, are just and reasonable under relative circumstances of the respective parties." ' [Citation.] 'In determining what is just and reasonable, "the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately . . . ." [Citation.] In addition to the parties' financial resources, the court may consider the parties' trial tactics.' [Citation.] 'The court should limit an award to fees that

43

were reasonably necessary, including by taking into account overlitigation.' [Citation.] '[S]ervices which have no apparent effect other than to prolong and to complicate domestic litigation cannot be deemed "reasonably necessary" [citation] "to properly litigate the controversy" [citation] and may properly be disregarded by a trial court determining whether and in what amount to order one party to contribute to the cost of the other's representation.' " (*In re Marriage of Nakamoto & Hsu*, *supra*, 79 Cal.App.5th at p. 469.)

We review a court's award of fees under section 2030 for abuse of discretion. (*In re Marriage of Nakamoto & Hsu*, *supra*, 79 Cal.App.5th at p. 469.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712; see also *In re Marriage of Nakamoto & Hsu*, at p. 469.)

Applying the foregoing review standards, we would normally assess for substantial evidence the court's finding that Sheila overlitigated the case and that her fee request was excessive. (See *In re Marriage of Nakamoto & Hsu*, *supra*, 79 Cal.App.5th at pp. 468-469.) " 'The substantial evidence standard of review is generally considered the most difficult standard of review to

meet, as it should be, because it is not the function of the reviewing court to determine the facts.' " (*Id.* at p. 470.)[20]

But Sheila does not meaningfully discuss the sufficiency of the evidence of the court's factual findings, that is, she does not discuss her litigation tactics and whether the record shows they were reasonably necessary. The extent of her argument as to the court's finding of overlitigation is to reiterate its finding as to the several-month court closure during the pandemic and to say, "The trial court did not consider that Kevin twice continued the proceeding." In our view, this point has no relevance to whether Sheila's litigation tactics were proper or improper, whether they caused the parties to expend unnecessary time and effort, or whether they unnecessarily prolonged the matter apart from pandemic-related delays or Kevin's requested continuances. Because Sheila does not offer anything to show the court's finding as to her overlitigation is unsupported by substantial evidence, "we presume it is supported by the record." (*In re Marriage of Nakamoto & Hsu, supra*, 79 Cal.App.5th at p. 472.) It is not enough for Sheila to suggest Kevin was to blame for increased attorney expense. (*Id.* at p. 473.) "It is irrelevant whether the trial court could have found that [Kevin was] responsible for unnecessarily prolonging trial. Instead, we review whether substantial

---

20    "Under the substantial evidence standard, ' "[o]ur review is limited to a determination whether there is any substantial evidence, contradicted or uncontradicted, that supports the finding. [Citation.] In so reviewing, all conflicts must be resolved in favor of [the prevailing party] and all legitimate and reasonable inferences must be indulged to uphold the finding." ' [Citation.] '[W]e examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference.' [Citation.] We do 'not reweigh the evidence, evaluate the credibility of witnesses or indulge in inferences contrary to the findings of the trial court.' " (*In re Marriage of Nakamoto & Hsu, supra*, 79 Cal.App.5th at p. 470.)

evidence supports the court's finding that [Sheila] engaged in excessive litigation." (*Ibid.*, some italics omitted.) Sheila's assertion that an attorney fee award to her is mandatory upon a finding of disparate incomes is unremarkable, as the court did award her $35,000 in fees.

## DISPOSITION

We reverse those portions of the postjudgment order modifying child and spousal support retroactive to May 1, 2019, and determining support effective November 2020 and remand this matter to the trial court for further proceedings to recalculate support in accordance with the views expressed in this opinion. In all other respects, including with respect to the step-down order as modified by the court's recalculation of spousal support, we affirm the order. The parties shall bear their own costs on appeal.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


BUCHANAN, J.

46